HOFFMAN et al. v. MAGNOLIA PETROLEUM CO. et al. (No. 523–4202.)

(Commission of Appeals of Texas, Section B. June 27, 1925.)

1. **Mines and minerals ⬤⇒55(2)—Deed conveying mineral rights, if ambiguous, construed against grantor.**

A deed conveying interest in mineral rights, if its intention is ambiguous, it is to be construed against grantor rather than grantee.

2. **Mines and minerals ⬤⇒55(2)—Specific and restricted intent of deed conveying mineral rights controlling.**

If what deed of mineral rights purports to convey is distinctly pointed out, such specific and restricted intent will control, though contrary could be construed as within other language, when considered separately.

3. **Mines and minerals ⬤⇒55(2)—Deed conveying mineral rights construed as whole so as to declare evident intention of parties.**

A deed conveying mineral rights must, if possible, be considered and made consistent as a whole, and so as to declare evident intention of parties.

4. **Mines and minerals ⬤⇒79(1)—Deed held to convey one-half interest in royalties of entire leased premises.**

Under deed conveying to plaintiff undivided one-half interest in all minerals, etc., in 90 acres described by metes and bounds, subject to lease which covered 320 acres, and also one-half of all royalties "due to be paid under the terms of said lease," *held*, that plaintiff is entitled to one-half interest in royalties or rentals of entire 320 acres.

5. **Mines and minerals ⬤⇒79(7)—Cross-action held to show accrual of royalties from particular acreage in which pleader interested.**

Cross-action, alleging conveyance of one-fourth of minerals in 90 acres of land, subject to lease, which covered 320 acres, and one-fourth of all bonuses, rentals, and royalties, and that there had been produced from "said land" oil and gas of specified value, *held* to show, as against general demurrer, that royalties had accrued by reason of production on the 90 acres, especially in view of admissions in answers.

6. **Pleading ⬤⇒403(1)—Admission of answer aid, as against general demurrer, averments of cross-action.**

Admissions contained in answer of defendants, on file when general demurrer of such defendants was considered aids, as against such demurrer, averment of another defendant's cross-action, if there are any omission of allegations in such cross-action.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Peter L. Hoffman and others against the Magnolia Petroleum Company and others, in which defendant F. A. Weiser interposed a cross-action, From a judgment of the Court of Civil Appeals. (260 S. W. 950)

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

affirming judgment sustaining general demurrer to petition and cross-action, plaintiffs bring error. Reversed and remanded.

Dedmon & Potter and Clay Cooke, all of Fort Worth, for plaintiffs in error.

Ernest May, of Fort Worth, A. S. Hardwicke and O. F. Wencker, both of Dallas, Goree, Odell & Allen, of Fort Worth, and C. C. Hampton, of De Leon, for defendants in error.

STAYTON, J. Peter L. Hoffman, as plaintiff, brought this suit for the recovery of the proceeds of royalties that accrued under an oil lease on a half section of land, basing his right of action upon a deed from lessors to himself. The district court sustained general demurrers to his petition, and the parties who demurred aver as the basis of the decision, and as correct law, the point that the deed only conveyed the royalty earned by wells drilled upon a tract of 90 acres out of the larger leased tract, whereas the petition did not allege that any wells had been brought in upon this particular 90 acres. The Court of Civil Appeals was of the same opinion, 260 S. W. 950. The defendants give assurance that this was and is the only question in the case; and for that reason, without a critical examination of the petition in other respects, the disposition of the cause will be governed accordingly. The specific inquiry is whether the deed gave plaintiff a right to participate in any royalties under the lease, unless production were had from a well upon the 90 acres.

As is shown by the allegations of the petition, the lease was in ordinary form to one R. O. Harvey as lessee; covered and conveyed the oil and gas under 320 acres out of a section of land in Comanche county; provided for a one-eighth royalty on oil, money royalty on gas, and rentals of $330 every six months, as consideration for deferring the commencement of a well, up to five years; made the rights under it perpetual during production; and negatived all obligation upon lessee to drill upon any particular part of the premises.

The deed to plaintiff is averred to have passed from lessors, Duke and wife, before the completion of any well on the half section, in consideration of $10,000 paid by him. It was delivered nine months after the date of the lease, and granted:

"The following, to wit: One-half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Comanche county, Texas, to wit: A certain 90 acres" (giving metes and bounds and describing the tract as out of the section already mentioned) "together with the rights of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas, and other minerals and removing the same therefrom."

The instrument continued:

"Said above-described lands being now under an oil and gas lease originally executed in favor of R. O. Harvey and now held by ————. It is understood and agreed that this sale is made subject to said lease but covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease. It is agreed and understood that one-half of the money rental which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Peter L. Hoffman and in the event that the said above-described lease for any reason becomes cancelled or forfeited then and in that event the lease interest and all further rentals on said land for gas and mineral privilege shall be owned jointly by Jas. N. Duke and wife, and ———— Hoffman, each owning one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents. * * * To have and to hold the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Peter L. Hoffman heirs and assigns, forever."

The plaintiff contends that the conveyance to him of "one-half of all of the oil royalty * * * due to be paid under the terms of said lease" is not confined to wells upon the smaller tract. The defendants reply that, since the smaller tract is the subject-matter of the deed, the quoted language should be construed as having reference to it alone, and that any other interpretation would be unreasonable.

Before deciding the question, the court would call to mind that, if the deed is capable of the meaning contended for by plaintiff, there would be nothing unreasonable in holding under the circumstances alleged that, for so substantial a cash consideration, the lessors, having previously conveyed to lessee all of the oil, gas, and minerals under the whole half section, and retained the surface for their own consistent uses, consented to part, not only with their possibility of a reverter in the oil, etc., of the 90 acres, but also with a full one-half of their right to royalties under the lease as an entirety, especially in view of the fact that the reverter was uncertain and the control over the placing of wells impossible. They may not have done that; but it would not have been wrong or inane upon its face if they had. Gypsy Oil Co. v. Schonwald (Okl. Sup.) 231 P. 864. And then again it could have been reasonable from their standpoint, and not unreasonable from that of grantee, if they had restricted their assignment of royalties to those from wells on the 90.

There are a number of rules of construction that will be noticed.

[1-3] This deed, if its intention be ambiguous, is to be construed against grantors rather than against grantee; and yet, if what it purports to convey is distinctly

pointed out in a manner and under circumstances showing that royalty as to wells located outside of the 90 acres was not in contemplation, although the contrary could be construed as within other language when considered separately, the specific and restricted intent would control. Regan v. Hatch, 91 Tex. 616, 45 S. W. 616. But the instrument must, if possible, be considered and made to speak consistently, as a whole, without the rejection of any words, and so as to declare the evident intention of the parties, and the latter is the principal rule to apply. Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930; Regan v. Hatch, 91 Tex. 616, 45 S. W. 616; Cullers v. Platt, 81 Tex. 258, 16 S. W. 1003.

[4] The deed, in the first part, conveys an undivided one-half interest in the possibility of a reverter of the oil in place under the 90 acres. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Humphreys, etc., Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607. For, "subject" to the lease, the one-half interest in the oil under that particular tract is conveyed to Hoffman. In the last part of the instrument it is provided that, if the lease shall be forfeited or canceled, the grantor and grantee shall share equally in all mineral interests and rights in "said land"; that is, the 90 acres. Gas and other minerals take the same course, but are not here involved.

Those passages have regard to minerals, the title to which has passed to the lessee, but which may revert to lessor and his assigns if the lease should terminate. But they are not the sole subject-matter of the conveyance. There follow other words regarding not the reverter but rents and royalties prior to the time the lease terminates, and while it is still in force, both before any well at all is drilled and after the drilling of a productive well.

The deed, after conveying the interest in oil, gas, and minerals, and referring, as the description and the allegations show, to the particular "lease" now under consideration, reads:

"It is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease. It is agreed and understood that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to said Peter L. Hoffman. * * *"

This is a plainly a statement that the deed conveys a one-half interest in the royalty to accrue under the terms of the lease as an entirety; that is, the lease upon the whole half section.

Instead of restricting these royalties to wells on the 90 acres, the conveyance covers one-half of "all" the oil royalty under the terms of the lease. That this passage refers to an interest in the whole instead of a part of the royalty, irrespective of where the wells shall be located, is corroborated by the provisions for one-half of the delay rentals payable under the lease. These, by the provisions of the latter instrument, are to accrue before any well at all is begun, and the conveyance of them can only refer to the lease as a whole, and hence not to a particular 90 acres of it; thus showing that in this connection a segregated 90-acre tract is not intended to be the measure of the rights granted.

The Court of Civil Appeals correctly decided that, under this lease, a subdivision of the land would not affect the rights and obligations of the lessee—that the purchaser occupies no better position than his vendor does. As to the lessee the lease remained an entirety, as did his duty to pay rents and royalties. The deed said the 90 acres was subject to the lease. It was. But a conveyance of a part of the land did not subdivide the lease and turn it into two leases, one upon the 90 and the other upon the remaining 320. There was therefore no lease covering solely 90 acres, and, when the deed refers to the "lease," it can only refer to the lease on the whole 320 acres. Murray v. Barnhart, 117 La. 1023, 42 So. 489; Galt v. Metscher, 103 Okl. 271, 229 P. 522; Gypsy Oil Co. v. Cover. 78 Okl. 158, 189 P. 540, 11 A. L. R. 129; McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859.

The words of the two instruments show this meaning, and it is one that may reasonably be viewed as the real intention of the parties.

[5] The same result follows in the case of the cross-action of the defendant Weiser. It may or may not be for a like reason, but certainly for another. Weiser, after alleging the execution of the same oil, gas, and mineral lease and production upon the land covered by it, averred that he received his deed before the completion of the wells. This deed, according to his pleading, was given by the lessors in consideration of $7,000 paid by him in cash, and conveyed one-fourth of all oil, gas, and other minerals underlying the 90 acres, subject to all valid leases for oil and gas purposes thereon, and including one-fourth of all bonuses, oil, and gas rentals and royalties that might arise from the lease or might accrue upon the 90 acres, which latter tract was the only parcel at this place specifically described, and was the land last referred to in the deed, as alleged.

Immediately following these allegations occur three important references, in the averments, to this particular 90-acre tract:

"That by the terms of said agreement the plaintiff became entitled to receive one-fourth of all bonuses, oil, and gas rentals and royalties that should thereafter arise therefrom or accrue upon the real estate therein described.

"Defendant further shows that there has been produced and sold from said land by the defendants, the Magnolia Petroleum Company, United Producers Pipe Line Company, and Transcontinental Company, oil and gas to the total value, as defendant is informed and believes, of $1,600,000, that under and by virtue of said contract defendant is entitled to receive one-fourth of the one-eighth royalty and rentals thereunder accruing to the land above described, and which said sum would amount to $14,000. * * *"

These allegations, as construed upon general demurrer, do not say that the royalties accrued by reason of production outside of the 90 acres, but on the contrary, that they accrued by reason of production upon the "said" land "above described" and covered by defendant Weiser's agreement or contract; that is, by his contractual rights in the 90 acres described in his deed.

That there was development and production upon this 90 acres and that money for resulting royalties is still due the defendant, Weiser, is also alleged in the answer of the defendants Transcontinental Oil Company, Tex-Penn Oil Co., and Producers' Pipe Line Company, who aver that two of them were assignees of the lease that has been mentioned, to the extent of the 90 acres, and the other was a purchaser of oil coming from that tract.

[6] These admissions, having been on file when the general demurrer of such defendants was considered, aided, as against that demurrer, the averments of the cross-action, if there were any omissions of allegations in the respect mentioned. Day Land & Cattle Co. v. State, 68 Tex. 538, 4 S. W. 865; Lyon, etc., v. Logan, 68 Tex. 525, 5 S. W. 72, 2 Am. St. Rep. 511.

It is suggested that there was a mistake with regard to the provisions of the deeds. If so, it may be remedied upon another trial.

The construction of the allegations makes unnecessary a consideration of the question upon which the opinion of the Court of Civil Appeals is alleged to conflict with the opinion in Gillette v. Mitchell (Tex. Civ. App.) 214 S. W. 619.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the cause be remanded for new trial.

CURETON, C. J. The judgments recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.