**STEPHENSON et al. v. GLASS et al.**
(No. 7401.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 21, 1925. Rehearing Denied Nov. 18, 1925.)

**1. Mines and minerals ⬉74—Right of lessee under oil and gas lease could not be impaired by lessor subdividing surface and selling off parcels to others.**

Where, under terms of oil and gas lease, lessee had primary and exclusive right to locate and drill wells where he chose in development of premises, such right was vested in him so long as contract was in force, and could not be impaired by lessor subdividing surface and selling off parcels to others during life of lease.

**2. Mines and minerals ⬉73½—Five-year term of oil and gas lease became absolute, unless terminated by lessee through abandonment or repudiation of his obligations thereunder.**

Where oil and gas lease was to be effective for five years, and thereafter as long as either actual or paying operations continued, subject to condition that lessee, within certain time, should begin drilling the first well and prosecute the work thereon with reasonable diligence, lessee having done so, five-year term became absolute, unless terminated by lessee through abandonment or by repudiation of his obligations thereunder.

**3. Mines and minerals ⬉77 — Forfeiture of lease not decreed on breach of an implied covenant in contract.**

Where contract did not expressly provide for forfeiture of oil and gas lease, equity would not decree a forfeiture on breach of an implied covenant in such contract.

**4. Mines and minerals ⬉78(1)—Covenant in oil and gas lease implied that lessee will use reasonable diligence to develop entire premises.**

Where there is no express provision therefor, there is an implied covenant in oil and gas lease that, after one or more producing wells have been brought in on leased or adjacent premises, lessee must use reasonable diligence to develop entire premises, if necessary, to exploit land or protect oil thereunder against drainage by adjacent operators.

**5. Mines and minerals ⬉78(2)—Breach of implied covenant to develop leased premises does not warrant forfeiture of lease by lessor.**

Breach of an implied covenant in oil and gas lease by lessee to use reasonable diligence to develop entire premises does not warrant forfeiture of lease at instance of lessor; his remedy being for damages.

**6. Mines and minerals ⬉73—Lease vested in lessee title to oil produced by leased premises subject to lessor's right to royalties and right of reinvestiture on termination of lease.**

Lease by which lessor bargained, sold, and conveyed unto lessee all the oil, gas, and other minerals, reserving to lessor one-eighth part of gross amount of oil produced, vested in lessee title to oil produced, subject to right of lessor to claim his royalties and right to a reinvestiture of whole of his original estate upon a termination of lease.

**7. Mines and minerals ⬉74—Lessor was without power to modify any rights of lessee by sale of part of property to another.**

Where effect of lease was to vest in lessee title to oil to be produced from the land during his tenure thereunder, subject only to right of lessor to royalties and reinvestiture on termination of lease, lessor was without implied power to convey, impair, or otherwise modify any of rights of lessee by sale of a part of property to another.

**8. Mines and minerals ⬉79(1)—Deed held to convey one-twentieth interest in royalty of entire leased premises.**

Deed conveying tract of 20 acres, subject to an indivisible oil and gas lease which covered 884 acres, and relinquishing grantor's royalty in such tract conveyed to grantee an undivided one-twentieth interest in royalty to be produced from whole acreage.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. **Mines and minerals ⬿78(1)—Owner of leased premises can convey estate to others in parcels; he cannot restrict lessee's right to operate at will upon premises without reference to subdivisions.**

Owner of land subject to oil and gas lease can subdivide leased premises and convey to others his estate in segregated parcels, but, unless expressly authorized, cannot restrict right of lessee to operate at will on premises without reference to such subdivisions, or require him to distribute royalty to several owners, except to prorate it to them in accordance with number of acres owned by them respectively.

10. **Mines and minerals ⬿74—Owner may restrict estate conveyed in leased premises to mere right of royalty, but restriction must be clear and definite.**

Surface owner may convey less than his whole estate in leased premises so as to restrict estate conveyed to mere right to take royalty from wells drilled on specific parcel purchased by grantee, but such restrictions must be expressed in clear and definite terms, and it will be construed most strongly against grantor if it is expressed in language of doubtful purport.

11. **Mines and minerals ⬿74—Conveyance of premises, subject to oil and gas lease, vested grantee with no more power over lessee than original lessor had.**

Conveyance by lessor of part of premises subject to oil and gas lease, wherein he relinquished to grantee his one-eighth royalty in tract conveyed, vested in grantee no more power over lessee than original lessor had, and lessee might completely ignore grantee, except to account to him for his pro rata of royalty produced from whole lease.

12. **Mines and minerals ⬿77—Grantee of part of premises subject to oil and gas lease held entitled to cancellation of lease.**

Grantee of premises subject to oil and gas lease, to whom lessor relinquished royalty interest in tract conveyed, held entitled to cancellation of lease, where lessee disavowed original contract by making a supplemental lease and undertook to force grantee into making a new and more onerous agreement, thereby repudiating original lease, notwithstanding provision in supplemental lease that terms of original lease should remain in force subject to conditions in later instrument.

13. **Evidence ⬿151(1)—Statement of lessee that he did not intend to abandon lease held properly excluded, where such intention was contrary to his conduct and declarations.**

In suit to cancel oil and gas lease, statement of lessee that he did not intend to abandon his lease as to tract owned by plaintiff held properly excluded, where such intention was directly at variance with his conduct and declarations to plaintiff.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by A. F. Glass and others against W. M. Stephenson and others. From an adverse judgment, defendants appeal. Affirmed.

Henry C. King, Jr., M. L. Roark, Van Haile McFarland, and Douglas & Carter, all of San Antonio, for appellants.

Kennon & Kennon, of San Antonio, for appellees.

SMITH, J. On March 20, 1919, John Stitz executed to V. H. Blocker an oil and gas lease upon 884 acres of land situated in McMullen county. The National Producing & Refining Company afterwards became the owner of the lease by assignment, and during such ownership the respective rights of lessor and lessee thereunder were adjudicated in an appeal reported in Stitz v. National Producing & Refining Co. (Tex. Civ. App.) 247 S. W. 657.

On August 25, 1920, Stitz, the owner and lessor of the land, conveyed by general warranty deed to Clara A. Glass a specifically described tract of 20 acres out of the land covered by the lease.

On January 5, 1923, W. M. Stephenson, who had in the meantime become the owner of the lease, entered into a supplemental contract with Stitz, whereby the original contract was reaffirmed, subject to material changes made in the new agreement concerning the obligations and rights of the lessee. The second agreement was by its terms made to cover the whole acreage embraced in the original lease, including, but not expressly mentioning, the 20-acre subdivision theretofore conveyed to Glass, who had not been consulted and who was not a party to the second agreement.

Shortly after making the second agreement with Stitz, Stephenson had a conference with Glass, owner of the 20-acre subdivision of the leased premises. He took the position with Glass that the original lease had been superseded by the second agreement, and that he (Stephenson) would look alone to the latter for his obligations to Glass, and demanded that the latter convey to him the whole estate in 5 acres out of the 20-acre tract, in which event only he would develop that subdivision. He sought, then, to enforce this demand by threatening, as an alternative, to not develop the subdivision, but to destroy its value by drilling all around it so as to drain the oil from under it. He thereafter consistently maintained this demand, and, when Glass refused to agree to the former, proceeded to enforce the latter by drilling wells adjacent to the Glass tract and draining oil from thereunder. Stephenson denied the facts hereinabove recited, but they are evidenced by much testimony, and established, at least in part, by jury findings. The interest of Clara A. Glass had passed to A. F. Glass and others, who instituted this litigation.

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The suit was brought to cancel the original lease, in so far as it affected the 20-acre tract, upon the ground that by his conduct Stephenson had repudiated his obligations as lessee thereunder. There were other parties to the suit, but, as they were claiming under Stephenson, they were disposed of with him, and no further reference need be made to them. The court submitted the cause to the jury upon special issues, which were resolved against Stephenson, who has appealed from the resulting adverse judgment.

[1] The original lease was substantially in the usual form of such instruments. It covered 884 acres of land, specifically described. As in all such cases, it was primarily an indivisible contract, the conditions of which rested uniformly and alike upon the whole acreage. Under its terms the lessee had the primary and exclusive right to locate and drill wells wherever he chose in the development of the premises. This right was vested in the lessee so long as the contract was in force, and could not be impaired or disturbed by the lessor subdividing the surface and selling off the parcels to others during the life of the lease. This rule applies to all such contracts in this state.

[2] It was provided in the original lease that it should be in force for a period of five years and thereafter as long as either actual or paying operations continued. This tenure, however, was made subject to the condition that the lessee should, within 90 days (subsequently extended to 9 months) from the date of the lease, begin drilling the first well and prosecute the work thereon with reasonable diligence. The lessee began and prosecuted the drilling of the first well in accordance with this stipulation, and, as a consequence, the five-year term of the lease became absolute, unless sooner terminated by the lessee through abandonment (Stitz v. National, etc., Co. [Tex. Civ. App.] 247 S. W. 657, par. 7), or unless, as appellee contends here, it was terminated when Stephenson repudiated his obligations thereunder.

[3-5] Except for a breach of the condition to drill the first well, the contract did not expressly provide for a forfeiture of the lease, and it is now well settled in this state that equity will not decree a forfeiture of this character of contract upon a breach of an implied covenant in such contract. Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464. It is equally well settled that, where there is no express provision therefor, there is an implied covenant in oil and gas leases that, after one or more producing wells have been brought in on the leased or on adjacent premises, the lessee will use reasonable diligence to develop the entire premises, if necessary to exploit the land or protect the oil thereunder against drainage by adjacent operators. But a breach of such implied covenant does not warrant forfeiture of the lease at the instance of the lessor. His remedy is for damages occasioned by the breach. Grubbs v. McAfee, supra.

[6] By the terms of the original lease here in controversy the lessor "bargained, sold, and conveyed * * * unto the lessee all of the oil, gas, and other minerals in, on, and under the land," together with the usual easements incident to leases of that character, "reserving, however, for the lessor the one-eighth part of the gross amount of oil produced" from the premises. The effect of these provisions was to vest in the lessee the title to the oil to be produced from the land during his tenure under the lease, so that the only estate remaining in the lessor during this tenure was the right to claim his royalty of one-eighth of the oil produced under the lease, and the right to a reinvestiture of the whole of his original estate upon a termination of the lease. Stephens County v. Mid-Kansas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Queen v. Turman (Tex. Com. App.) 257 S. W. 1092; McRae v. Japhet (Tex. Civ. App.) 269 S. W. 829; Gillette v. Mitchell (Tex. Civ. App.) 214 S. W. 619.

[7] It was provided in the original lease that, should a sale be made of the surface of the leased premises, "it shall be subject to this lease agreement," and in the conveyance from Stitz to Glass of the specifically described 20 acres, which was made by general warranty deed, it was expressly provided that the conveyance was made subject to the existing lease. It was unnecessary, however, to express this reservation either in the lease contract or deed of conveyance, for it would have been implied in the absence of express provisions to the contrary; the lessor being without implied power to convey, impair, or otherwise modify any of the rights of the lessee.

[8] Following the description of the 20-acre tract, it was provided in the deed of conveyance to Glass that, "as the above-described 20 acres of land has been leased for oil, gas, and mineral purposes, I (the grantor) therefore relinquish my one-eighth royalty in said land to Clara A. Glass, for value received." As the lease was an undivided and indivisible contract, covering in its entirety the whole of the acreage described therein, the provision relinquishing the "royalty in said land" will be construed as a conveyance of an undivided one-twentieth interest in the royalty to be produced from the whole acreage under the lease contract. Hoffman v. Magnolia Co. (Tex. Com. App.) 273 S. W. 828.

[9] The owner of the surface of land burdened with an oil and gas lease has the undoubted right to subdivide the leased premises and convey to others his estate in the segregated parcels, but he has no power not expressly contracted for to restrict the right of the lessee to operate at will upon the premises without reference to such subdivi-

sions, or to require him to distribute the royalty to the several owners of the subdivisions except to prorate it to them in accordance with the number of acres owned by them respectively. See authorities cited next above.

[10, 11] It is true that the surface owner may convey less than his whole estate in the leased premises so as to restrict the estate conveyed to the mere right to take the royalty from wells drilled on the specific parcel purchased by the grantee, but such restriction must be expressed in clear and definite terms. It will be construed most strongly against the grantor if it is expressed in language of doubtful purport. The estate of the grantor in this case consisted of the undivided royalty interest in prospective oil production, as well as the right of reinvestiture of the fee-simple title upon the termination of the existing lease. In the deed in question the grant of the royalty interest was in general terms, whereby the grantor "relinquished" to the grantor his "one-eighth royalty in said" tract thereby conveyed. If it was the intention of the grantor to restrict the grant to the royalty to be derived from wells drilled on the specifically described 20 acres, the restriction could and should have been, but was not, clearly expressed. As the grant was in general terms, it will be construed as passing the full and precise royalty interest of the grantor, to wit, an undivided one-twentieth interest in the royalty to be derived from the development of the entire leased premises, under the terms of the existing lease, to which specific reference was made in the conveyance. Hoffman v. Magnolia Co., supra. In other words, the purchaser of the subdivision took the same estate that his vendor had; no more, no less. He had no more power than his grantor had to terminate the lease or control operations thereunder. He could not require the lessee to drill any more or other wells, or upon other locations or particular locations, not required of the lessee while the whole acreage embraced in the lease was intact. The vendee of the subdivision had not one whit more power over the lessee than the original lessor had. The lessee's obligations were not affected in any way whatever by the sale of a part of the whole acreage covered by the lease. The lessee had the right to completely ignore the purchaser of the subdivision, except to account to him for his pro rata of the royalty produced from the whole lease. Hoffman v. Magnolia Co., supra; McRae v. Japhet, supra; Gillette v. Mitchell, supra.

So this was the status of the parties at the time Stitz and Stephenson came to terms upon the second, or supplemental, lease; that is to say, the lessee's rights had not been disturbed or affected by Stitz's sale to Glass of the segregated 20-acre tract out of the leased premises, and the lessee could ignore that sale and proceed with development upon all or any particular portion of the whole lease without let or hindrance from either Stitz or Glass, subject, however, to the termination of the lease by the lessee's own conduct. This conclusion brings us to the remaining and the only difficult question in the case, Did Stephenson, the lessee, by entering with Stitz into the second or supplemental lease contract, and by his subsequent course of conduct towards Glass in relation thereto, abandon or forfeit his right to enforce specific performance of the original lease in so far as it covered the segregated 20-acre tract?

The supplemental contract executed by Stitz and Stephenson was by its terms made to apply to the entire acreage covered by the original contract, and therefore embraced the segregated subdivision of 20 acres theretofore purchased out of that acreage by Glass from Stitz. While it is true that the supplemental lease contained a provision that the terms of the original lease should remain in force subject to the conditions in the later instrument, this provision was ineffectual as a practical matter, for the reciprocal obligations of the parties were so altered and modified therein as to amount to a novation. The result was the abrogation of the old and the substitution of a new contract, the conditions of which by its own terms were spread over and made to embrace the entire acreage covered by the original lease, including the segregated subdivision, the title to which was then in Glass. The making of the new contract by Stitz and Stephenson is mentioned here, not as having the effect of impairing or affecting the rights of Glass under the original lease, but as evidencing a subsequently disclosed scheme of the lessee to disregard and override those rights and impose the terms of the substituted lease upon Glass. This suspected scheme was at once made obvious by the conduct of Stephenson, the lessee, in declaring to Glass the abrogation of the original lease and the substitution of the new lease therefor; in demanding the conveyance to him of the fee-simple title to Glass' whole estate in 5 of the latter's 20 acres in consideration of the development of the remaining 15 acres under the substituted contract; and in threatening as an alternative the destruction of the value of the whole 20 acres for oil and gas purposes.

[12] We have reached the conclusion that the legal effect of the conduct of the lessee in disavowing the original contract and undertaking to force the lessor into making a new and more onerous agreement amounted to a repudiation and renunciation of the existing lease; that these acts warranted the lessor in treating the existing contract as having been terminated, and entitled him to judgment conceling that contract. 13 C. J. 651 et seq.; 9 Cyc. 635 et seq.; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Kilgore v. Baptist Ass'n, 90 Tex. 139,

37 S. W. 598; Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302. We overrule appellants' first, second, third, ninth, and tenth propositions relating to this question.

[13] Appellant undertook to show that, notwithstanding his conduct, it was not his intention to surrender his lease as to the Glass subdivision, and to that end offered to testify that in his statement to Glass, in which he repudiated the lease in question, he "did not thereby intend to abandon the lease as to the Glass 20 acres." The court properly excluded this testimony. If Stephenson harbored a secret intention to retain the lease, or not abandon it, such intention was directly at variance with his conduct and declarations to Glass, and the latter could not be bound by the undisclosed intention. Acts are more potent than words, and words speak louder than unexpressed thoughts or intentions. Stephenson's whole course, his declarations to and demands upon Glass, and his letters to the latter evinced a definite and consistent purpose to repudiate the old and force a new contract upon Glass, and his secret motives and his agreements with third persons could not serve to change the legal effect of his attitude with Glass. We overrule appellants' fourth, fifth, and sixth propositions.

In his seventh and eighth propositions appellant complains of portions of the argument made by appellees' counsel before the jury. The argument complained of did not constitute error, and no injury is claimed to have resulted to appellant on account thereof. Those propositions are accordingly overruled.

The eleventh and twelfth propositions of law advanced by appellant have been incorporated in this opinion, but they do not affect the result of the appeal.

The judgment is affirmed.

### On Motion for Rehearing.

Since the original opinion was filed in this cause, the Commission of Appeals has recommended, and the Supreme Court has adopted, a decision reversing the judgment of the Court of Civil Appeals of the First District in the case of McRae v. Japhet, 269 S. W. 829, cited with our approval in our original opinion. In that case the owner and lessor of a tract of land, then under an oil and gas lease, conveyed to a third party his entire estate in a segregated portion of the land, subject to the existing lease upon the entire premises. The Commission of Appeals held that the purchaser of the segregated parcel took title to none of the oil royalty to be derived from operations under the lease, except from wells actually drilled in the segregated parcel purchased by him. They held that the purchaser did not take an undivided interest in the royalty to be derived from the entire premises covered by the lease. In adopting the report of the Commission of Appeals, the Supreme Court did not expressly approve the holding upon the one question determined.

Now, in the case of Hoffman v. Magnolia Co., 273 S. W. 828, the same section of the Commission of Appeals, under an apparently similar state of facts, held that a purchaser of a specifically described subdivision of a larger tract under lease, in the absence of express agreement to the contrary, took an undivided interest in the royalty to be derived from the entire leased premises; that the estate conveyed to him was not restricted to the royalty from wells drilled in the segregated parcel purchased by him. In other words, assuming the facts are alike, as they appear to be, the decisions in the two cases are in direct and irreconcilable conflict. In the Hoffman Case, but not in the other, the Supreme Court not only adopted the report of the Commission of Appeals, but expressly approved their holding upon the controlling question in the decision.

In the instant case, which we are unable to substantially distinguish from the two cases cited, we followed the decision in the Hoffman Case, and held that under the facts the purchaser of the segregated parcel of leased premises took a proportionate undivided interest in the royalty to be derived from the entire premises; that, in the absence of an express stipulation therefor, his estate was not restricted to the royalty to be derived from operations upon the segregated parcel purchased by him.

As we perceive no distinction between the three cases, and are unable to distinguish either of them from either of the other two, we feel obliged to adhere to the holding adopted in the original opinion herein.

But, inasmuch as that holding was only incidental to and cannot affect the result reached in the case, we overrule appellants' motion for rehearing.