**Ash ROBINSON, Appellant,**

v.

**HUMBLE OIL & REFINING COMPANY,**
**et al., Appellees.**

**No. 6927.**

Court of Civil Appeals of Texas.

Texarkana.

April 4, 1957.

Rehearing Denied May 9, 1957.

Wm. H. Watts, Frank G. Dyer, W. J. Knight, Houston, for appellant.

Nelson Jones, Dillard Baker, Walter B. Morgan, Rex G. Baker, Baker, Botts, Andrews & Shepherd, J. C. Hutcheson, III,

Wm. R. Choate, Houston, C. M. Gaines, San Antonio, for appellees.

FANNING, Justice.

Appellant, Ash Robinson, sued to establish title to an undivided 11/48 part of the royalty on oil, gas and other minerals due and to be paid under the terms of an oil and gas lease dated August 12, 1936, from The Dallas Joint Stock Land Bank of Dallas, as Lessor, to Humble Oil & Refining Company, as Lessee, as allegedly amended by an instrument dated September 20, 1944, and for an accounting and recovery of the proceeds of such royalty. The appellees in the case are Humble Oil & Refining Company, George H. Coates, Edwin L. Cox, Jake L. Hamon, Edwin B. Cox and Elizabeth L. Cox, Louis B. O'Neil, individually and as Independent Executor of the Will and Estate of John T. O'Neil, deceased, I. P. O'Neil, individually and in his capacity as Independent Executor of the Will and Estate of John T. O'Neil, deceased, Arnold D. Larson, individually and in his capacity as Independent Executor of the Will and Estate of John T. O'Neil, Mary Ellen O'Neil Doherty, and husband Emmett E. Doherty, and Martelia A. Selman. The issues with respect to accounting were severed from the case. The case was tried to a jury.

Defendants made a motion for instructed verdict and the trial court reserved a ruling on the law questions involved in the case. The jury answered the five special issues submitted with reference to certain matters, favorably to plaintiff. Defendants' motion for judgment was sustained. Plaintiff has appealed.

In 1936, John F. Sinclair acquired from Dallas Joint Stock Land Bank the Sutherland Ranch containing some 21,000 acres of land in Duval County, Texas. In this deed the Land Bank reserved ¼ of the royalty in fee on the lands conveyed and a $25,000 oil payment out of the remaining royalty acquired by Sinclair, and a deed of trust lien was retained to secure the un-

paid balance of the purchase price. Two of the surveys included in this ranch were S. K. & K. Survey 504 and B. S. & F. Survey 562. At the time Sinclair acquired the ranch, some 11,746 acres of it, including Survey 562 and some other 24 sections, were under an oil and gas lease previously executed by the Land Bank to Humble Oil & Refining Company. Survey 504 was at that time subject to another lease originally executed by the Land Bank to Ray B. Campbell, but such lease had been assigned by him to H. H. Weinert, Inc., and it was stipulated that this lease expired on August 12, 1940.

Shortly prior to November 18, 1936, a syndicate, of which plaintiff Ash Robinson was a member, entered into negotiations with Sinclair through his agent H. W. Ferguson, President of the Land Bank, to purchase certain mineral interests in some of the Sutherland Ranch properties.

As hereinafter stated, the great weight and overwhelming preponderance of the evidence was to the effect that these negotiations related only to Surveys 504 and 562, and that these negotiations resulted in an agreement to purchase a ¼ interest in the minerals in these two sections at a price of $50 per acre.

On November 18, 1936, a written contract was entered into between Sinclair and E. C. Terrell, who was the nominee of the Syndicate, which contract provided among other things that Sinclair should execute a deed and procure a subordination of the Land Bank's lien to "the interest hereby contracted to be sold."

The deed in question from Sinclair to E. C. Terrell was executed on November 21, 1936. We quote from this deed as follows:

"The State of Texas
"County of Duval }  Know All Men By These Presents:

"That John F. Sinclair, of Washington, D. C. has granted, bargained,

sold and conveyed and by these presents does grant, bargain, sell and convey unto E. C. Terrell of the County of Colorado, State of Texas, the following, to-wit: ¼ interest in and to all the oil, gas and other minerals on, in and under and that may be produced from the following described lands situated in Duval County, Texas, to-wit:

All of Survey No. 504, Abstract No. 1254, Certificate No. 81, Original Grantee S. K. & K., containing 640 acres of land, more or less. (Now under lease to H. H. Weinert)

All of Survey No. 562, Abstract No. 1256, Certificate, No. 1/951, Original grantee B. S. & F., containing 640 acres of land, more or less. (Now under lease to Humble Oil & Refining Company) together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil and gas and other minerals and producing, storing, treating, marketing and removing the same therefrom.

"The above described lands are now under and embraced in and covered by an oil and gas mineral lease originally executed in favor of the above named lessees, and now held and owned by the said lessees; and it is understood and agreed that this sale and conveyance is made subject to said lease but covers and includes ¼ part of the royalty on oil, gas and other minerals due and to be paid under the terms of said lease.

"It is agreed and understood that no part of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said E. C. Terrell. In the event that the above described lease for any reason becomes terminated, cancelled or forfeited, then and in that event a full ¼ interest in and to the oil, gas and other minerals on, in and under and

that may be produced from said lands shall be owned by the said E. C. Terrell." * * *

The subordination agreement called for in the contract was also executed on November 21, 1936, and the deed and subordination agreement were delivered contemporaneously. The subordination agreement, executed and delivered as a part of the same transaction, specifically described Survey 504 and Survey 562, and contains, among others, the following provision:

"* * * The Dallas Joint Stock Land Bank of Dallas * * * does hereby subordinate said vendor's and deed of trust lien, and said oil payment to the rights acquired by said E. C. Terrell in and to above described land by virtue of aforesaid mineral and royalty deed; * * * *but nothing herein contained shall be construed as a release or subordination of any other rights owned or held by the undersigned nor shall anything in this instrument be construed as affecting in any way any land described in said deed of trust except said Surveys 504 and 562 more particularly described above.*" (Emphasis added.)

By an instrument dated December 3, 1936, which was identical in all respects with the form of the Sinclair-to-Terrell deed except for the change of fractional interests, Terrell conveyed to plaintiff Ash Robinson a 9⁄64 interest out of the interests conveyed to him under the Sinclair-Terrell deed. It was stipulated that plaintiff Ash Robinson had made conveyances out of the interest vested in him under the above-mentioned deed from Terrell to Robinson to the extent of 7⁄18 of whatever interest and estate vested in him under said deed. (Sinclair conveyed to H. H. Weinert certain non-participating royalty in Surveys 504 and 562, and Weinert conveyed to plaintiff a portion of this royalty. The plaintiff's title to this interest he acquired from Weinert is not in issue in this suit and the judgment entered by the trial court so provides.)

By a deed dated October 8, 1938, John F. Sinclair executed a deed reciting that he had acquired title to the lands conveyed to him by the Land Bank for the benefit of himself, Gladys E. Sinclair, Frances Sinclair and Gladys Sinclair in the proportion of ¼ to each and conveyed to the other parties named each a ¼ interest therein. This deed was duly filed for record October 20, 1938, and duly recorded.

Under date of September 20, 1944, John F. Sinclair, Gladys E. Sinclair, Gladys S. Brooks, Frances Sinclair Larson, Wright W. Brooks and Harold W. Larson, therein referred to as Lessor, and Humble Oil & Refining Company, therein referred to as Lessee, executed an instrument designated Change of Lease Description, covering the 11,746 acres in question plus additional lands, which instrument is later in this opinion more fully noted and referred to.

In 1947, John F. Sinclair and wife, Gladys E. Sinclair, Gladys Sinclair Brooks and husband, Wright W. Brooks, and Frances Sinclair Larson and husband, Harold W. Larson, conveyed to John T. O'Neil ⅝ of the oil, gas and other minerals in and under or that may be produced from 21,360.58 acres of land in Duval County, Texas, including the 11,746 acres leased to Humble. John T. O'Neil conveyed portions of said interest (as shown by the record) to Edwin B. Cox, Jake L. Hamon and George H. Coates.

Plaintiff contends that the deed from Sinclair to Terrell conveyed, not only ¼ of the minerals under Surveys 504 and 562, together with ¼ of any royalties attributable to this ¼ mineral interest, but also ¼ of the royalties payable on production from the entire 11,746 acres covered by the Land Bank-Humble lease of August 12, 1936, as allegedly amended by the 1944 lease instrument. Plaintiff contends that such is a result required by the decision in the case of Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 1925, 273 S.W. 828, and by other cases which follow the Hoffman v. Magnolia case.

Defendants interposed five main defenses to plaintiff's suit which were:

"1. That plaintiff's attempt to construe the Sinclair-Terrell deed as a conveyance of any interest in lands other than the two sections specifically described must fail for want of a valid description of such lands.

"2. That the Sinclair-Terrell deed, construed either alone or in connection with the subordination agreement which formed a part of the same transaction, clearly shows that the parties did not intend for the deed to convey a royalty interest in any lands except Surveys 504 and 562.

"3. In the alternative, if this intention to limit the conveyance to a mineral and royalty interest under Surveys 504 and 562 was not clearly shown on the face of the instruments, they were ambiguous and should be construed in accordance with the true intent of the parties, which intent was so limited.

"4. In the further alternative, that if the deed on its face should be construed as plaintiff claimed, it was the result of mutual mistake and should be reformed.

"5. Still further in the alternative, that even if the Sinclair-Terrell deed were construed as plaintiff claimed, plaintiff still could not recover, because the Humble lease, as the same existed at the time of the Sinclair-Terrell deed, had expired for want of production in paying quantities during the primary term."

The first, second and fifth contentions set out above were urged by defendants in support of motions for instructed verdict made at the close of plaintiff's evidence and repeated at the close of all the evidence. The trial judge, while expressing the tentative view that the law issues would ultimately control the case, reserved a ruling on these issues until after any ques-

tions of fact arising in connection with the third and fourth defenses had been passed on by the jury. He thereupon invited plaintiff to request an issue which could form the basis for a judgment in his favor if the deed were held to be ambiguous on its face. Plaintiff not only declined to do so, but through his counsel, stated that he would object to the submission of any issue inquiring whether the parties actually intended to convey an interest in the royalties payable on production from the entire 11,746 acres covered by the Humble lease. No such issue was, therefore, given.

The jury in response to Special Issues 1 and 2 found to the effect: (1) That by the use of the phrase "said lease" appearing in the Sinclair-Terrell deed it was intended to refer to two separate oil, gas and mineral leases including as one of them the Land Bank-Humble lease of August 12, 1936; and (2) that at the time of the execution of the Robinson-Banks lease on Section 504 plaintiff Robinson did not know of the 1944 amendment to the Land Bank-Humble lease of August 12, 1936.

Special Issues Nos. 3, 4 and 5 were as follows:

"No. 3: Do you find from a preponderance of the evidence that in the transaction which was consummated by the deed of November 21, 1936, from John F. Sinclair to E. C. Terrell, John F. Sinclair did not intend to sell and the syndicate of which Ash Robinson was a member did not intend to buy, any interest in the royalties under any properties in the Sutherland Ranch except Surveys 504 and 562?

"No. 4: Do you find from a preponderance of the evidence that John F. Sinclair believed at all times prior to March 1, 1940, that the deed of November 21, 1936, to E. C. Terrell did not convey any interest in any properties other than Surveys 504 and 562?

"No. 5: Do you find from a preponderance of the evidence that a person of ordinary prudence in the position of John F. Sinclair would, in the exercise of ordinary care to protect his own interests, have believed at all times prior to March 1, 1940, that the deed of November 21, 1936, did not convey an interest in any property other than Surveys 504 and 562?"

Special Issues Nos. 3, 4 and 5 were each answered by the jury: "We do not."

After the verdict of the jury defendants filed a motion for judgment. In this motion they raised the grounds previously urged in support of their motion for instructed verdict, together with the additional ground that if the deed should be held to be ambiguous on its face that plaintiff could not recover because he failed to seek and obtain a jury finding that the parties intended to convey an interest in the entire 11,746 acres and that plaintiff failed to discharge his burden in this respect and had waived any possible cause of action on said theory.

Defendants' motion for judgment was sustained and in the judgment plaintiff's interest was limited to Surveys 504 and 562.

Appellant presents four points in his original brief wherein he contends in essence that the trial court erred: (1) In not entering judgment on the verdict of the jury in favor of plaintiff and against defendants for the full relief sought in plaintiff's pleading; (2) in not entering judgment on the verdict of the jury in favor of plaintiff and against defendants adjudging plaintiff to have title to an $11/128$ royalty interest under the Humble lease of August 12, 1936, as amended, as to all lands included in said lease, and awarding him judgment against defendants individually; (3) in granting defendants' motion for judgment and rendering judgment accordingly; and (4) in limiting plaintiff to an accounting for royalty from Survey 504 under the Robinson-Banks lease of September 4, 1947. The parties have also presented

**944**

various counter-points, reply points and supplemental points.

We have carefully examined the record and have reached the conclusion that the trial court rendered a correct judgment in favor of defendants, and that there are several reasons why this judgment should be affirmed.

■ In the first place, we think the trial court correctly construed the deed from Sinclair to Terrell as conveying only ¼ interest in the minerals in and under Surveys 504 and 562, together with the same interest in any royalties which might accrue on production from such two surveys, and nothing more, since such deed did not contain a sufficient description of or sufficient reference to the entire 11,746 acres of land covered by the Land Bank-Humble lease of August 12, 1936, to convey an interest in the entire 11,746 acres. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703; Burrows v. Seale, 148 Tex. 411, 225 S.W.2d 966; Davis v. Kirby Lbr. Corp., Tex.Civ. App., 158 S.W.2d 888, wr. ref.; Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150; Sneed v. Lester, Tex.Civ.App., 76 S.W.2d 802, wr. ref.; Penn v. Texas Yellow Pine Lbr. Co., 35 Tex.Civ.App. 181, 79 S.W. 842, wr. ref.

The Sinclair-Terrell deed does not describe the entire 11,746 acres, describes no land other than Surveys 504 and 562, contains no reference to *any existing* written instrument from which the description of such 11,746 acres can be obtained, and contains no nucleus of any description of any land from which the description of the 11,746 acres can be supplied. Plaintiff apparently recognizing that the deed as written was insufficient on its face to convey an interest in the entire 11,746 acres, sought and obtained jury findings based wholly on parol and extrinsic evidence to the effect that the reference in the deed should have been to two separate and distinct leases covering separate and distinct lands instead of one lease covering all of the land, and that one of these two leases to which the parties intended to refer

was the Land Bank-Humble lease. It is clear from the record that there was no single lease in existence from the Land Bank to Humble and H. H. Weinert jointly. In fact, there never was any lease to H. H. Weinert. There was a lease from the Land Bank to Campbell (covering survey 504) and Campbell later assigned this lease to H. H. Weinert, Inc. According to the jury (on the basis of parol and extrinsic testimony) the parties intended to refer to two leases, one in favor of Campbell which had been assigned to H. H. Weinert, Inc., and one in favor of Humble, but the deed itself referred only to one non-existent lease and there never was in fact a joint lease to Humble and H. H. Weinert. We think such extrinsic evidence and jury findings thereon are wholly ineffective to supply the fatal lack of description of the 11,746 acres in controversy, and we hold that the deed failed to convey an interest to Terrell in the entire 11,746 acres. See the authorities cited above.

■ Appellant urges the doctrine of falsa demonstratio non nocet, as set out in Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380, and other cases, and contends that the false portion of the recital in the deed with reference to the "lease" can be disregarded, and that there would remain a sufficient reference to the Humble lease from which it could be identified, etc. We think this rule is inapplicable to the facts in this case because the reference in question is to a non-existent instrument and if the incorrect portion of the reference to a "lease" is omitted, there is no reference whatsoever remaining.

■ While the great discrepancy in the amount of land specifically described in the Sinclair-Terrell deed (1280 acres) with the 11,746 acres claimed by appellant under the faulty reference to a "lease" is not perhaps actually material on the question of the legal sufficiency of the description with reference to the 11,746 acres, yet we think this great discrepancy does serve to emphasize the reason of the rule requiring

a strict construction of an extraneous reference in a deed, in aid of the description of the land conveyed. Davis v. Kirby Lbr. Corp., Tex.Civ.App., 158 S.W.2d 888, er.ref.; Pfeiffer v. Lindsay, 66 Tex. 123, 1 S.W. 264.

Under such circumstances, because of the fatal lack of any character of legal description of or valid reference to the 11,746 acres, we think the trial court correctly construed the Sinclair-Terrell deed as conveying only a ¼ interest in the minerals and royalties in and under Surveys 504 and 562, which were the only lands described in the Sinclair-Terrell deed.

■ As a second reason for the affirmance of the trial court's judgment, we think the Sinclair-Terrell deed, construed either alone or in connection with the subordination agreement obtained from the Land Bank and delivered as a part of the same transaction, shows, as a matter of law, that the parties did not intend for such deed to convey a royalty interest in any lands other than Surveys 504 and 562.

Appellant vigorously contends that under authority of the case of Hoffman v. Magnolia, Tex.Com.App., 273 S.W. 828, he is entitled to a judgment for the interest sued for in the entire 11,746 acres. Appellant also cites in this connection the cases of Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563, and Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, which cite Hoffman v. Magnolia, supra, with approval.

Appellant contends that the Sinclair-Terrell deed is unambiguous and as a matter of law evidenced an intent to convey a ¼ interest in the royalties payable on production from the entire 11,746 acres covered by the Humble lease under the doctrine of Hoffman v. Magnolia, supra.

Much has been written about the case of Hoffman v. Magnolia, supra. See the following: 30 Texas Law Review, 395; 32 Texas Law Review, 682; 35 Texas Law Review, pages 42-46. For a proper understanding of the Hoffman v. Magnolia

case, we think that it must be considered strictly on the basis of what was actually decided there as well as what *was not* actually decided there. For a rather clear and cogent analysis of *what was actually decided* in the Hoffman case and *what was not decided there,* we respectfully refer to an article written by an eminent authority, Judge Stayton, (the author of the decision in Hoffman v. Magnolia) entitled "An Easement to Decision" in 35 Texas Law Review, pp. 42-46.

As we view the decision in Hoffman v. Magnolia, it primarily decided two matters: (1) That a grantor may convey to a grantee in a single deed a perpetual mineral interest subject to a lease and a disproportionate part of the royalty payable under such lease; (2) that on general demurrer the particular deed in that case could be construed as to accomplish such a result.

The Supreme Court of Texas in Woods v. Sims, 273 S.W.2d 617, 621, stated:

"Mineral deeds such as those involved in this case convey separate and distinct estates in the land, including (1) a permanent interest in the minerals in place which subsists during and beyond the life of the existing lease, and (2) an interest in the royalty to be due and payable under the lease. The first estate is determined by the first and fourth paragraphs, and the second estate is determined by the third paragraph. Accordingly, the instrument *may* convey an interest in the royalty which is larger or smaller than the interest conveyed in the minerals in place. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563. It has long been settled that an instrument in such form conveying a certain interest in the minerals under a specified tract *may* through the provisions of the third paragraph vest in the grantee an interest in all royalty payable under a lease on a larger tract. Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S.W. 828." (Emphasis added.)

We think a careful analysis of the Hoffman v. Magnolia case will reveal that there are vital differences between the deed there and the Sinclair-Terrell deed and subordination of lien agreement here, and that these differences require a holding here, as a matter of law, that there was no intent for the Sinclair-Terrell deed to convey nor did such deed convey an interest in any lands other than Surveys 504 and 562.

There are prominent differences in the language used in the Sinclair-Terrell deed and the language used in the deed in Hoffman v. Magnolia. We quote from the Hoffman deed as follows [273 S.W. 829]:

"It is understood and agreed that this sale is made subject to said lease but covers and includes one-half of *all* the oil royalty and gas rental or royalty due to be paid under the terms of said lease. *It is agreed and understood that one-half of the money rental which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Peter L. Hoffman.* * * *". (Emphasis added.)

The word "all" is not used in the Sinclair-Terrell deed and there is an express provision therein that no part of the money rentals is to be paid Terrell. The court in the Hoffman v. Magnolia case while adverting to the well-settled rule of construction that the specific description in a deed will control and limit the general description unless there is a clear and explicit intention reflected by the deed that the general description should control, held (as the question was raised on general demurrer) that the general description could control and stated:

"Instead of restricting these royalties to wells on the 90 acres, the conveyance covers one-half of '*all*' the oil royalty under the terms of the lease. That this passage refers to an interest in the whole instead of a part of the royalty, irrespective of where the wells shall be located, *is corroborated by the* *provisions for one-half of the delay rentals payable under the lease.* These, by the provisions of the latter instrument, are to accrue before any well at all is begun, and the conveyance of them can only refer to the lease as a whole, and hence not to a particular 90 acres of it; *thus showing that in this connection a segregated 90-acre tract is not intended to be the measure of the rights* granted." (Emphasis added.)

The Hoffman v. Magnolia case was not reversed and rendered but was reversed and remanded on the proposition that the trial court erred in sustaining a general demurrer to plaintiff's petition. No parol evidence of intent of the parties was introduced in evidence. In Hoffman v. Magnolia it was also stated:

"It is suggested that there was a mistake with regard to the provisions of the deeds. If so, it may be remedied upon another trial."

There are also distinctive differences in the descriptions of the leases referred to in the Hoffman deed and in the Sinclair-Terrell deed. The Hoffman deed referred to an *existent* lease "originally executed in favor of R. O. Harper." This lease covered 320 acres and there was no question about the reference to the Harper lease being a sufficient reference to the lease which did correctly describe the 320 acres there involved. In the Sinclair-Terrell deed there was a reference to a *nonexistent* lease, and there was no valid description of or valid reference to the 11,746 acres in question, as hereinbefore pointed out.

A further factual difference between the Hoffman deed and the Sinclair-Terrell deed is one of degree. The Hoffman deed (which contained a valid and sufficient reference to the lease which described the 320 acres there involved) was construed to increase the royalty from ½ of 90 acres to ½ of 320 acres, an increase of approximately 3½ to 1; here the appellant Robin-

son argues that the lease reference in the Sinclair-Terrell deed (which we hold is insufficient to refer to the 11,746 acres) increased the royalty from $\frac{1}{4}$ of 1280 acres to $\frac{1}{4}$ of approximately 11,746 acres, an increase of approximately 10 to 1.

■ There is also another marked distinction between the case at bar and the Hoffman v. Magnolia case in that in this case the deed is not the sole instrument which evidences the intent of the parties. In this case there was another instrument which is a part of the integration and which must be read with the deed to determine the interest conveyed. This is the subordination agreement from the Land Bank to Terrell, hereinbefore described, which was dated the same day as the deed and delivered simultaneously with the deed, pursuant to the executory contract between Terrell and Sinclair heretofore described. We think that under this record the deed and subordination agreement should be construed together. Rudes v. Field, 146 Tex. 133, 204 S.W.2d 5; Murphy v. Jamison, Tex.Civ.App., 117 S.W.2d 127, wr. ref.; Farmers Royalty Holding Co. v. Anglin, Tex.Civ.App., 205 S.W.2d 410, wr. ref., N.R.E. We again quote from the subordination agreement as follows:

"* * * The Dallas Joint Stock Land Bank of Dallas * * * does hereby subordinate said vendor's and deed of trust lien, and said oil payment to the rights acquired by said E. C. Terrell in and to above described land by virtue of aforesaid mineral and royalty deed; * * * *but nothing herein contained shall be construed as a release or subordination of any other rights owned or held by the undersigned nor shall anything in this instrument be construed as affecting in any way any land described in said deed of trust except said Surveys 504 and 562 more particularly described above.*" (Emphasis added.)

We hold that the Sinclair-Terrell deed, whether construed alone or with the subordination agreement executed as a part of the same transaction, clearly shows that the parties did not intend for the deed to convey any interest in any lands except Surveys 504 and 562.

■ As a third reason for the affirmance of the trial court's judgment, we think appellees' fourth counterpoint is well taken and should be sustained under the record of this case. This counterpoint reads as follows:

"The trial court correctly entered judgment for the defendants because, even if it be assumed, for the sake of argument, that the deed from Sinclair to Terrell was effective to convey a one-fourth interest in the royalties which might become payable on production from the entire 11,746 acres covered by the lease from Dallas Joint Stock Land Bank to Humble dated August 12, 1936, no royalties ever became payable under the terms of such lease."

The primary term of the Land Bank-Humble lease ended on August 12, 1946, and it was stipulated that no production had been obtained up to that date. It was further stipulated that on August 12, 1946, a well was drilled on Survey 195, being a survey covered by the lease, but this well was abandoned as a dry hole on August 22, 1946. It was further stipulated that no other drilling occurred on any land covered by the Land Bank-Humble lease within thirty days thereafter, or in fact, within a year thereafter. Therefore the Land Bank-Humble lease, as it existed on November 21, 1936, expired on September 21, 1946, and no royalties ever became payable under its terms.

After September 21, 1946, the right of Humble to explore for and produce oil from any of the lands covered by the original lease continued solely because of an

instrument executed on September 20, 1944. This 1944 instrument was executed by John F. Sinclair, Gladys E. Sinclair, Gladys Sinclair Brooks, Frances Sinclair Larson, Wright W. Brooks and Harold W. Larson in favor of Humble, and purports to amend the original lease of 1936 so as to include under the terms thereof their interest in additional lands not previously covered and to change the amount of delay rentals payable. This instrument contained present words of grant, described all of the lands covered by the 1936 lease by reference and in addition specifically described three additional tracts (including Survey 504 which had been leased to Campbell and which lease had expired in 1940) covering 1,231.5 acres of land.

Plaintiff Ash Robinson and the other members of the syndicate acquired mineral interests in Survey 562 (which was a part of the 1936 Humble lease) and in Survey 504 (which Survey 504 was not one of the tracts described in the Land Bank-Humble lease of 1936) but none of these persons joined in the execution of the 1944 instrument.

■ The unilateral action on the part of the Sinclair family in executing the 1944 instrument did not bind the interests then outstanding under the Sinclair-Terrell deed and this 1944 instrument was ineffective as to the outstanding interests then owned by plaintiff Robinson and the other members of the syndicate. Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43; Stephenson v. Glass, Tex.Civ.App., 276 S.W. 1110; Stephenson v. Glass, 115 Tex. 192, 279 S.W. 260.

There was no showing or jury finding that the Sinclairs purported to bind the interest of plaintiff Ash Robinson by the 1944 instrument.

Also on June 5, 1946, Humble obtained a separate lease from plaintiff Ash Robinson on his interest in Survey 504, for the term of three months, and drilled a dry hole thereon. After the Robinson-Humble lease on Robinson's interest in Survey 504 expired, plaintiff Robinson leased this interest in Survey 504 to Banks. A well was begun on October 30, 1947, by Humble on one of the tracts originally included in the 1936 lease, which well was completed as a producer in paying quantities on November 23, 1947, and had produced in paying quantities up to and including the date of the trial of the case at bar.

■ The jury found that plaintiff Robinson had no actual knowledge of the 1944 instrument until after he executed the leases covering his interest in the minerals in Survey 504. Since Robinson bases his claim to royalty to the entire 11,746 acres under the 1936 Humble lease and the alleged reference to it in the Sinclair-Terrell deed, and he further bases his claim on the proposition that the 1936 lease was maintained in force and effect by the 1944 instrument which he claims benefits under, then he must necessarily base his claim on the 1944 instrument as a part of his alleged chain of title. The 1944 instrument was duly recorded and if it was in appellant's chain of title he is charged with constructive notice thereof. Williams v. Harris County Houston Ship Channel Navigation District, Tex.Com.App., 128 Tex. 411, 99 S.W.2d 276, 110 A.L.R. 59. If Robinson conceded that the 1944 instrument was not in his chain of title, he would, under this record, have no basis for claiming royalties under the 1944 instrument. Appellees' fourth counterpoint is well taken under this record and we sustain same.

■ Appellees' third counterpoint reads as follows:

"The trial court correctly entered judgment for the defendants because, if the deed from Sinclair to Terrell is ambiguous, the burden rested upon the plaintiff to seek and obtain a jury finding based upon a preponderance of the evidence that the parties intended, in addition to the one-fourth mineral interest in Surveys 504 and 562, to convey a one-fourth interest in the royal-

ties payable on production from the entire 11,746 acres covered by the Humble lease of August 12, 1936, and plaintiff waived and abandoned any possible cause of action based upon this theory by refusing to request and objecting to the submission of such an issue to the jury."

We have already held that as a matter of law the Sinclair-Terrell deed, (whether construed alone or in connection with the subordination agreement) did not convey or purport to convey the interest claimed by plaintiff in any lands other than Surveys 504 and 562. We think these holdings are correct and decisive of this case. However, if we are mistaken in this holding, and if the Sinclair-Terrell deed were to be held ambiguous, we would, in the alternative sustain appellee's third counterpoint under this record. We pretermit a further discussion of this matter as we do not believe that this question will be reached.

Appellees also alternatively contend by cross-assignment of error that the answers of the jury to Special Issues Nos. 3, 4 and 5 were against the great weight and overwhelming preponderance of the evidence.

A great amount of extrinsic evidence was produced to show the real intent of the parties as to the interests to be conveyed under the Sinclair-Terrell deed. Several witnesses who had knowledge of the transaction testified favorably to appellees' contention with respect to this matter. Plaintiff Robinson produced no witness in his behalf but himself on his contention with reference to what was intended to be conveyed by the Terrell deed. Robinson's oral testimony in this respect is also inconsistent with a letter he wrote on November 18, 1936, which is shown in the record. We deem it unnecessary to discuss at length the evidence in this case, but it is our opinion that the great and overwhelming weight and preponderance of the evidence in this case is to the effect that the parties to the Sinclair-Terrell deed did not intend for such deed to convey any interest in any lands other than in Surveys 504 and 562.

We think the jury's findings to Special Issues Nos. 3, 4 and 5 are so against the great weight and overwhelming preponderance of the evidence as to be manifestly unjust and clearly wrong. Under our view of the case we think it is unnecessary for us to reach appellees' cross-assignment, however, if it should become necessary for us to reach appellees' cross-assignment, we would sustain same.

As above stated, we think there are several valid reasons why the judgment of the trial court should be affirmed, and we hold that the trial court rendered a correct judgment.

Each and all of appellant's points and contentions contained in his original brief, reply brief and supplemental brief, have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.

Affirmed.