JONAS HAYTHORN v. WILLIAM RUSHFORTH AND JOHN AN-
DREWS.

In Replevin.

1. A general or special property in goods, with the actual or constructive pos-
session, is sufficient to maintain either trespass or replevin.

2. It is not necessary there should be a manual seizing of the property to con-
stitute a tortious taking.   An unlawful intermeddling with, or an exercise
or claim of dominion over it, without authority or right, will render the
party liable to trespass or replevin.

3. Whether the action of replevin may be sustained for a wrongful detention,
when the taking was not tortious: Quære?

This was an action of replevin brought in the Circuit Court
of the county of Hudson, to recover certain machinery for the
manufacturing of woollen goods.

The defendants pleaded *non cepit*, and property in themselves.
The cause was tried at the last December term of that court, a
verdict rendered for the plaintiff on both issues, and his damages
assessed at three hundred dollars.

After the plaintiff had rested, the defendants' counsel moved
for a nonsuit, upon the ground that there was not sufficient evi-
dence of a wrongful taking to sustain the action.   The motion
was overruled, with permission however to the defendants to ob-
tain the advisory opinion of this court upon the question.  Where-
upon the case was certified, according to the statute, and after
argument by

*A. S. Hubbell* for the plaintiff and

*J. D. Miller* for the defendants,

The opinion of this Court, was delivered by

WHITEHEAD, J.   The case shows the following state of
facts : The plaintiff and one John Buckley were originally the
joint owners of the machinery in question ; and on the dissolu-
tion of the co-partnership between them in October, 1836, the
plaintiff sold and assigned all his right and interest therein to
Buckley, who thereby became the sole owner thereof.   In the
spring of 1837, Buckley rented a building of the defendants in
the township of Lodi, in the then county of Bergen, and remov-
ed the machinery into it.   He was engaged for some time in

manufacturing goods for the defendants at a given sum per yard, they finding the stock, and he furnishing the labor and machinery. The defendants soon after this arrangement became insolvent, and failing to fulfil their part of the contract in furnishing the materials, the parties made another arrangement, by which " the defendants were to work the machinery, part of the time towards the rent of the building, and Buckley to do any country work that might offer." He stopped manufacturing in the summer of 1837, but retained the key of the bui.ding and had the control of the machiney until November or December of that year, and until the same was demanded by the plaintiff as hereinafter mentioned.

On the 4th of November, 1837, Buckley being indebted to the plaintiff, executed to him a bill of sale of the machinery, at which time, he says, he considered himself in the possession of it. One or two weeks after this, the plaintiff went to the factory of the defendants in company with Buckley, and demanded the machinery of Rushforth. The plaintiff said " I have come after the machinery " and exhibited to him the bill of sale. Rushforth refused to deliver it, saying, it should not go out of the factory until they got others in the place of it. Buckley was present and consented that the plaintiff should take it.

Under this state of facts, the defendants insisted, that the goods had not been tortiously taken, and consequently that replevin would not lie. Whether tortiously taken or not, depends in some measure, upon the possession of the goods by Buckley at the time of the execution of the bill of sale.

It is manifest from the evidence, that Buckley, at the time of the execution of the bill of sale to the plaintiff, was the absolute owner of the machinery; and if not in the actual possession thereof, he was so constructively. He considered himself in the possession of it. It was in a building he had rented of the defendants, the key of which he retained. By the last arrangement between the parties, after the defendants had failed in the business, the defendants were only permitted to use the machinery when Buckley had no use for it. There was nothing in this arrangement which gave to the defendants any right or power over it, affecting Buckley's right to use, sell or deliver it. When

the plaintiff exhibited his bill of sale, and demanded the machinery, the defendants did not question his right of property, nor did they assert any right to the possession. They refused to suffer it to be removed, until its place was supplied by other machinery, thereby placing their refusal, not upon a claim of right, but upon the ground of inconvenience to themselves.

Under this evidence, it appears to me, Buckley must be considered, at the time of the execution of the bill of sale, as having beyond all question, the constructive possession of the machinery ; and by the bill of sale, the plaintiff succeeded to all his rights, both of property and possession.

Now it has been repeatedly ruled, that a general property in goods, with the constructive possession thereof, that is to say, a right to reduce them to possession at pleasure, is sufficient to maintain either trespass or replevin.

The case of *Dunham* v. *Wyckoff*, 3 *Wend.* 280, came before the court upon a demurrer to the avowry of the defendant, in which he avowed the taking of the goods in question, as sheriff, by virtue of a writ of execution against one Griswold, as the goods and chattels of Griswold, the same being in the possession of Griswold. The pleadings admitted, that at the time of the taking, the property was in the plaintiff, and the possession in Griswold the defendant in execution. The question was, whether replevin would lie. The court say, " replevin lies where trespass *de bonis asportatis* will lie. The plaintiff must have property general or special, and possession either actual or constructive. The plaintiff having the property in the goods in question, had the constructive possession ; for the property draws to it the possession. The plaintiff therefore had the right to take possession at pleasure, and could have sustained trespass : and replevin and trespass in such cases are concurrent remedies."

The plaintiff then being the absolute owner, and in the constructive possession of the machinery ; did the conduct of the defendants, at the time the demand was made, amount in law to a tortious taking thereof or was it such an interference with the property, as would entitle the plaintiff to maintain an action of trespass against them ?

The evidence is, that when the plaintiff exhibited his bill of

sale and demanded the machinery, the defendant Rushforth *re-fused to deliver it, saying, it should not go out of the factory until they get others in the place of it.* Here was an unlawful inter-meddling with the property ; an exercise, or claim of dominion over it, without any pretence of authority or right. This, with-out a manual seizing of the property is sufficient in law, to con-stitute a tortious taking; 7 *Cowen Rep.* 735 ; 10 *Wend. R.* 349 ; 23 *Wend. R.* 462 ; 15 *Wend. R.* 631, and consequently renders them liable to an action of trespass or replevin.

It is not necessary to the decision of the question in this cause, to express an opinion upon another point raised by the plaintiff's counsel, whether the action of replevin in this state, may not be sustained for a wrongful detention, when the taking was not tor-tious.

The Supreme Court of Massachusetts hold, that the action lies for goods unlawfully detained though there was no tortious taking. 15 *Mass. Rep.* 284 ; 16 *Mass. Rep.* 147. In the last case Putnam judge, is of opinion, that one may be considered constructively taking goods, who came lawfully, into possession, but keeps them from the owner against right. Chief Justice Savage, in reference to these decisions, remarks in *Marshall* v. *Davis,* 1 *Wend.* 109, " were the question new in this court, I should be strongly inclined to hold the doctrine of the Massachu-setts Court correct."

There is a strong disposition in courts to favor this action, as it furnishes a more adequate remedy than trespass or trover ; and not unfrequently it is the only effectual remedy for the party injured. In the language of the late Chief Justice Ewing, 6 *Halst.* 374, " the remedy by replevin is prompt, efficacious and beneficial, and the use of it on proper occasions should be rather fostered than repressed."

ELMER, J. The only question for the consideration of this Court is, whether the judge decided correctly in overruling the motion for a nonsuit made by the defendants upon the ground that replevin would not lie, no proof having been given that the machinery was tortiously taken.

It was ruled by this court in the case of *Bruen* v. *Ogden,* 6 *Halst.* 370, " that where goods or chattels are so taken as to en-

title the owner or possessor to an action of trespass, an action of replevin may be maintained." Such is the doctrine of the common law; and it has been in no wise altered or abridged by our statute; the first section of which authorizes the writ of replevin, "if the goods and chattels of any person be taken and unlawfully detained." The common law doctrine is to be learned from authority rather than from any course of reasoning. In pronouncing the opinion of the court, Chief Justice Ewing enters into an examination of numerous authorities sustaining the opinion delivered. According to this decision, replevin will lie in all cases where trespass *de bonis asportatis* can be maintained; thus placing it on the same ground as trespass; and further that replevin cannot be maintained without proof of an unlawful taking; a wrongful detention not being sufficient to sustain it as intimated in the brief of the counsel of the plaintiff.

In the same case of *Bruen* v. *Ogden*, the court also declare, that "the remedy by replevin is prompt, efficacious and beneficial and the use of it on proper occasions should be rather fostered than repressed."

To maintain trespass, the plaintiff must have property general or special and possession either actual or constructive. The general property draws to it the possession, and he who has the general property, although he may not have the actual possession, yet if he have the right to take possession at pleasure, may maintain trespass. 9 *Cowen*, 690; 8 *Johns.* 435; *Bac. Abr. Trespass, C.* 2.

What constitutes a trespass or unlawful taking? An answer to this question will determine the validity of the objection under consideration.

Upon an examination of the authorities, the following principles applicable to this question will be found to have been adopted. An actual manucaption of the goods is not necessary to constitute a tortious taking. The contrary has often been held. Any exercise or claim of dominion, though by mere words, the speaker having the goods within his power, may constitute such a taking as will sustain an action of trespass. Merely making an inventory and threatening to remove goods, which is prevented by another giving a receipt for them, has been held sufficient.

although the goods are not touched by the officer.   A claim of dominion, an intention being indicated to interfere with the goods, under pretence of any right or authority, amounts to a constructive trespass.   To sustain trover or trespass *de bonis asportatis* evidence of an actual, forcible dispossession is not necessary ; any unlawful interference with the property or exercise of dominion over it in exclusion or defiance of the plaintiff's right by which he is damnified, is sufficient to sustain either action. This is settled by numerous cases in relation to the action of trover, and trespass and trover are concurrent remedies for most illegal or tortious takings.   Any unlawful interference with or assertion of control over the property of another, is sufficient to subject the party to an action of trespass or trover.   These principles will be found fully supported by reference to the following authorities : 3 *Wend.* 281 ; 5 *Cowen*, 326 ; 7 *Cowen*, 735 ; 8 *Wend.* 613 ; 1 *Chitty Pl*, 151, 2, 3, 169 ; 10 *Wend.* 350 ; 12 *Id.* 39 ; 23 *Id.* 462.

Apply the foregoing principles to the facts of the case under consideration and it will be found that the judge decided correctly in refusing the nonsuit.   In October, 1836, the machinery in dispute was at Belleville, in the county of Essex, and belonged to the plaintiff and John Buckley ; at that time the former conveyed to the latter his share in the same, by a written bill of sale. Buckley had possession of the machinery, manufactured woollens for the defendants at a stipulated price per yard, they finding the materials, and used it at Belleville until the middle of April, 1837, when he removed it to a factory at Lodi, which he rented of the defendants.   His possession and control of the machinery continued until the 4th of November, 1837, when he conveyed the same to the plaintiff by a written bill of sale.   The defendants had no interest in the machinery or right to use it, except a part of the time, towards the payment of the rent ; a right which, for aught that appears, Buckley had the power at any moment to revoke.   By the last sale, all the interest of Buckley passed to the plaintiff, who thus acquired a general property in the machinery and the same right to immediate possession that Buckley had at the time of the sale.   Under these circumstances the plaintiff went to the factory of the defendants where the machinery was, and found Buckley and Rushforth there.   The plaintiff

stated to Buckley, that he had come for the machinery.   Buckley said to Rushforth, what shall I do, I must let him have it. Rushforth replied, no, it shall not go out of this place until I get other machinery to replace it.   Buckley consented that the plaintiff should take it, but notwithstanding the latter produced his bill of sale, Rushforth said he should not have it, and he was obliged to go away without it.   He afterwards went for it again but was unable to obtain it; a guard having been placed over it and an intimation given, that an attempt to take it would be resisted.

These facts appeared when the plaintiff rested his cause; they show an unlawful interference and exercise of dominion over the machinery, prejudicial to the interest of the plaintiff, and place the defendants in the position of trespassers.

*The Circuit Court advised to give judgment for the plaintiff.*

CITED *in Brown* v. *Bissett,* 1 *Zab.* 274.