### GEORGE BRUCH v. JOHN CARTER.

1. Untieing and removing a horse from a hitching post, standing in the highway, to which he had been hitched by the plaintiff, being the owner, and to the use of which post the plaintiff had, if not an exclusive right, as good a right as the defendant, amounts to, at least, a technical trespass, and is sufficient to warrant a recovery for nominal damages, if nothing more, and to prevent a non-suit.

2. Evidence offered to show that defendant's father put the post there, and that defendant assisted him in doing it, without showing that he acted in the matter complained of under the direction or permission of his father, was not material evidence under the general issue, and was properly rejected.

3. What is essentially a trespass, cannot become lawful from having been done with good intention; neither can the manner of doing the thing affect its intrinsic character. If unlawful in its own nature, it must continue to be so.

4. When, upon the trial, the defendant applies for leave to amend his plea, by adding to the general issue pleas of justification to some of the counts of the declaration, it is an application to the discretion of the court, and the decision of the court is not revisable by writ of error.

5. A judge has an undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may intimate an opinion as to the weight of evidence, or call the attention of the jury to any matter in the cause affecting the credibility of a witness. This is also a matter of judicial discretion, and not subject to review in error.

In trespass.    Error to Warren Circuit.

*S. B. Ransom,* for plaintiff in error.

*J. G. Shipman,* for defendant in error.

The opinion of the court was delivered by

WOODHULL, J.    The writ of error in this case brings up for review a judgment of the Warren county Circuit Court, against the plaintiff in error and two co-defendants, Jacob Cowell and Robert Fair, after verdict in an action of trespass.

The defendants, Cowell and Fair, having refused to join in the writ, the plaintiff in error, after rule and severance, was allowed to prosecute it alone.

The declaration contains four counts. The first sets forth that the defendants, " with force and arms, seized and wrested, from a certain hitching post at which there stood tied, a certain horse of the said plaintiff of great value, to wit, of the value of three hundred dollars, and took the said horse a great distance, to wit, the distance of ten yards, and tied him to another post, and threw the said horse down and killed him."

The second count alleges that the defendants, " with force and arms, seized and broke loose, from a certain post of the said plaintiff, where he stood tied, a certain other horse of the said plaintiff of great value, &c., and removed the said horse a great distance, to wit, a distance of ten yards, and fastened the said other horse to a certain other post, by means whereof the said horse of the said plaintiff became entangled in his halter, was thrown with great violence upon the ground, and was instantly killed."

The third count states that the defendants, " with force and arms, broke loose, &c., (as in the second) and threw down, and caused to be thrown down upon the ground, the last named horse of the said plaintiff, and with a certain horse, then in the possession of the said defendant, George Bruch, did stamp, beat, strike, and injure, and kill the said last named horse of the said plaintiff."

The fourth count thereby charges that the defendants, " with force and arms, and with a certain horse, which the said defendants then and there had so greatly beat, hurt, and wounded a certain other horse of him, the said plaintiff, of great value, &c., that by reason thereof, the same horse afterwards died."

To this declaration the plaintiff in error, by his attorney, pleaded the general issue, and the other defendants below, by their attorney, pleaded the same plea.

The first error assigned is, " that the declaration, and the

matters therein contained, are not sufficient in law for the said John Carter to maintain his action against the said George Bruch."

As every act complained of in the declaration is alleged to have been done by all the defendants, it follows, that the declaration, and the matters therein contained, if insufficient to maintain the action against the plaintiff in error, must be equally so to maintain it against the other defendants below, or either of them. The objection, therefore, amounts simply to this, that the declaration contains no legal cause of action. But as this objection was not urged, and, I think, even alluded to, in the argument before this court, it may be fairly presumed to have been abandoned.

Had it been otherwise, it cannot be supposed that the learned counsel, who so ably and earnestly argued this cause for the plaintiff in error, would have failed to press it upon the attention of the court.

In the absence of anything to indicate wherein the declaration is supposed to fall short of disclosing a legal cause of action, it is sufficient to say that, taking the facts to be true, as stated in either one of the four counts, they show a trespass committed by the defendants, to the injury of the plaintiff below, and for which he may recover damages in this action.

The objection to the declaration is, therefore, not sustained.

It appears by the bill of exceptions that, after the plaintiff below had rested his cause, the defendants, by their counsel, moved that the plaintiff be non-suited, on the ground that he had not established his right to recover in the action. The motion was overruled, and this is the second matter assigned for error.

If there was error in refusing to order a non-suit, it must be because the plaintiff had failed to offer any evidence from which the jury might legally infer that the defendants, or either of them, had committed any act of trespass alleged in the declaration.

No extended examination of the testimony is required to show that the motion to non-suit was properly refused.   The

fact that Jacob Cowell, one of the defendants, untied the plaintiff's horse, and removed him from the hitching post, to which his owner had fastened him, is so clearly established by the testimony of John Carter, the plaintiff below, and of Jacob Cowell himself, that it does not appear to have been at all controverted in the cause. It is equally clear that the post in question stood in the highway, and that the plaintiff's right to use it, if not exclusive, was, at least, as good as that of either of the defendants. Here, then, we find, without looking further, acts done by one of the defendants, which must be held to amount to at least a technical trespass, for which the plaintiff below would be entitled, under the declaration in the cause, to recover nominal damages against this defendant, if nothing more.

The plaintiff had, therefore, established his right to recover in the action, and there was no error in overruling the motion for a non-suit.

The defendants next moved the court for leave to amend their plea, by adding to the plea of general issue, pleas of justification to each of the three first counts of the declaration, on the ground that Cowell's father was the owner of the post from which Carter's horse was removed.

The refusal to allow this motion, is the subject of the third assignment of errors.

A conclusive answer to this is, that the application to amend was addressed to the discretion of the court below, and having been decided there adversely to the plaintiff in error, that decision cannot be made the subject of review here on writ of error.

In the case of *Crawford* v. *New Jersey Railroad and Trans. Co.*, 4 *Dutcher* 479, a motion to amend the declaration had been denied by the judge at the Circuit, and this was assigned for error. Justice Haines, delivering the opinion of court, says: "If the granting or refusing of a motion to amend is a matter of discretion, as it clearly was before the passage of the act to facilitate pleadings, (*Nix. Dig.* 635,) referring evidently, to the act of March 17th, 1855, it is not assign-

able for error." In support of this position, a number of authorities are cited, and among them the case of *McCourry* v. *Suydam*, 5 *Halst.* 248, in which Chief Justice Ewing adopts the language of the Supreme Court of the United States, in the case of *Wright* v. *The Lessee of Hollingsworth*, 1 *Peters* 168, as stating the true doctrine upon this subject. The conclusion reached by Mr. Justice Haines was that, notwithstanding the passage of the act referred to, relating to pleadings, the refusal to amend was still a matter of discretion, and, therefore, no ground of error.

In the case of *Marine Insurance Co.* v. *Hodgson*, 6 *Cranch* 206, which does not appear to have been referred to in either of the cases just mentioned, the defendant, after the cause had been up on writ of error, and had been remanded to the Circuit Court for further proceedings there, moved for leave to file two additional pleas. The motion was denied, and this was one of the errors relied on for reversing the judgment. Mr. Justice Livingston, in delivering the opinion, says: "This court does not think that the refusal of an inferior court to receive an additional plea, or to amend one already filed, can ever be assigned for error. This depends so much on the discretion of the court below, which must be regulated more by the particular circumstances of every case, than by any precise and known rule of law, and of which the superior court can never become fully possessed, that there would be more danger of injury in revising matters of this kind, than what might result now and then from an arbitrary or improper exercise of this discretion. It may be very hard not to grant a new trial, or not to continue a cause, but in neither case can the party be relieved by a writ of error; nor is the court apprized that a refusal to amend or to add a plea, was ever made the subject of complaint in this way."

In support of the same general doctrine, as to matters resting in discretion, see *Wright* v. *Green*, 6 *Halst.* 334; *Gilliland* v. *Rappleyea*, 3 *Gr.* 142; *Roth* v. *Schloss*, 6 *Barb.* 319; *Hunt* v. *Hudson River Fire Ins. Co.*, 2 *Duer* 489; *Garner* v. *Hannah*, 6 *Duer* 275; *Brown* v. *McClune*, 5 *Sandf.*

224; *Hodges* v. *Tenn. Marine and Fire Ins. Co.,* 4 *Seld.* 418; *Furman* v. *Applegate,* 3 *Zab.* 33; *Wood* v. *Young,* 4 *Cranch* 237; *Chirac* v. *Reinicker,* 11 *Wheat.* 280; *Den* v. *Gray,* 9 *Wheat.* 576; *Phincle* v. *Vaughan,* 12 *Barb.* 215.

It appears by one of the bills of exception that, towards the close of the testimony on the part of the defendants, the counsel for Bruch, asked the witness, Jacob Cowell, the following question: "Who put the post in the ground there from which you removed Carter's horse that day?" Which question was overruled by the court as proving an immaterial fact.

The counsel then offered to prove, by the same witness, that the post from which he removed the horse, was his father's post; that the witness helped to put it there; and that he had a right to tie to it. Which offer was overruled by the court.

The fourth and fifth assignments of error are founded upon the rejection by the court of the evidence thus offered on the part of the plaintiff in error.

This evidence appears to me to be wholly immaterial to the issue in the cause, and to have been, for that reason, properly overruled. Admitting all these alleged facts to be true, they neither establish, nor tend to establish, in the defendants, or either of them, any such exclusive right to use the post in question as would enable them to justify the acts complained of in the declaration. It may well be doubted whether even Jacob Cowell's father, upon the facts as offered to be proved, could have legally untied and removed the plaintiff's horse, as the defendants, or one of them, did in this case. He may have owned the post, and may have placed it where it stood, in the highway near the church, for his own convenience; he may have had a perfect right to remove it at his pleasure, but while it remained there, should it not be regarded as so far dedicated to the use of persons having occasion to attend that church, than any one finding it unoccupied, might lawfully tie his horse to it? However this may be, and whatever exclusive right Jacob Cowell's

father may be supposed to have had to use the post in question, it is very certain that Jacob Cowell could not justify under that right, without showing that he acted by the direction, or, at least, the permission of his father. This he did not offer to do; but merely offered to prove that he helped his father put the post where it stood.

But the evidence in question, even if material, could not have been received under the general issue.

The rule is, that the defendant may, under the general issue, give in evidence any matter which directly controverts the truth of any allegation which the plaintiff, on such general issue, will be bound to prove; and no person is bound to justify, who is not, *prima facie*, a trespasser; but when the act would, at common law, *prima facie*, appear to be a trespass, any matter of justification, or excuse, or done by virtue of a warrant or authority, must, in general, be specially pleaded. 2 *Saund. Pl. & Ev.* 856, (4th *Am. ed.*); 2 *Gr. Ev.*, § 625; *Carson et al.* v. *Wilson*, 6 *Halst.* 43.

Here the offer was, manifestly, not to controvert anything which the plaintiff was bound to prove, but merely to justify acts which "would, at common law, *prima facie*, appear to be a trespass." There was, therefore, no error in overruling the evidence.

The sixth matter assigned for error is, that the judge at the Circuit refused to charge the jury "that the defendants had the right, under the circumstances of this case, to remove the plaintiff's horse from one post to another, in order to make room for the defendant, Bruch, to tie his horses; provided, such removal was made in a skillful and proper manner, and the plaintiff's horse was properly and securely fastened to the post to which he was removed."

The seventh is, that the judge refused to charge, "that at a funeral at a church, as was the fact in this case, any person driving a team of horses to a carriage in the funeral procession, has a right, when the procession reaches the church, to tie his horses to any vacant post in the public highway, erected for that purpose by those who frequent the

church, and, if in order to do this, it becomes necessary to remove a horse standing near by to the next post, he has a perfect right to remove such horse, provided he removes him in a skillful and proper manner, and properly and securely fastens him to the post to which he removes him."

The subject of the thirteenth assignment is that part of the judge's charge which relates to the legal right claimed by the defendants, and disposes of it as follows, viz., "the defendants contend that they had a right to remove that horse from one post to another, provided that, in so doing, they acted with proper skill and care; and their insistment is, that they were not influenced by any improper motive; that the horses driven by Mr. Bruch came to the church with a funeral, and that it was lawful to remove the plaintiff's horse to make room for them. But I do not concur in this view of the law, thus presented to you by the counsel of the defendants. The defendants did not possess the legal right claimed. If they, or any of them, untied the plaintiff's horse from the post to which the plaintiff had secured him, and removed him in the manner disclosed by the evidence, all of them who participated in that act became trespassers, and responsible to him for all the damage which has actually and naturally resulted from such act. The motive is not material."

The question presented for consideration by each of the three last mentioned assignments, the 6th, 7th, and 13th, is, substantially, the same, viz., whether the defendants had a legal right to do the acts complained of in this case. The answer to this must unquestionably be the same as that given by the court below. The defendants neither had, nor could have, any such legal right as that claimed for them in this case, for the plain reason that the existence of such a right would be utterly inconsistent with, and destructive of, the inherent legal rights of the owner of the horse; rights growing out of, and inseparable from the fact of ownership. Property is defined to be "the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal

way, to use it and exclude every one else from interfering with it." *Burrill's L. Dic.*, "*Property.*" Again, "the right of property is that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe." 2 *Bl. Com.* 2. "The right of property consists in the free use, enjoyment, and disposal of all a person's acquisitions, without any control or diminution, save only by the laws of the land." 1 *Bl. Com.* 138. The plaintiffs, then, being entitled, by the law of nature and by the common law, to the absolute and unrestricted use and control of his horse, entitled to hold him with "sole and despotic dominion," "in total exclusion of the right of any other individual in the universe," what becomes of the supposed legal right of the defendants to exercise over him any authority whatever? To hold that one man may lawfully, for his own pleasure or convenience, make use of, or in any way interfere with, the property of another, without his permission, would be to introduce, into the law of property, a doctrine at once novel and dangerous; a doctrine sanctioned by no safe authority, deducible from no sound principle of law or reason, impossible to be defined with precision, and for that reason, all the more dangerous to those rights of private property which the laws of all civilized countries are especially solicitous to protect and enforce. The fact that the defendants were actuated by no improper motives in doing as they did, could not be material in a case where only compensative damages were sought to be recovered. That which is, essentially, a trespass, cannot become lawful from being done with good intentions, neither can the manner of doing the thing affect its intrinsic character. If unlawful in its own nature, it must continue to be so, however carefully or skillfully it may be done.

The eighth matter assigned for error is, the refusal of the judge to charge the jury "that as there is no allegation in the plaintiff's declaration, that the death of the plaintiff's horse was caused by the act of removing the plaintiff's horse

from one post to another, the plaintiff cannot recover the value of the horse or damages, without showing that the defendants caused his death by throwing him down, as charged in the declaration."

In the second count of the declaration it is alleged that the defendants removed the horse, &c., by means whereof, &c., the horse was killed. This, although not in terms, is, in substance, an allegation that the death of the horse was caused by the act of removing him. There was, therefore, no error in refusing to charge as requested.

The ninth error assigned is, that the court refused to charge " that the mere fact of unfastening the plaintiff's horse from one post and tying him to another, even though the same may have been improperly and unlawfully done, does not, upon the declaration filed in this case, entitle the plaintiff to recover the value of the horse."

The tenth error assigned is, the refusal to charge that, if the defendants acted improperly and unlawfully in removing the horse of the plaintiff, the plaintiff, upon the pleadings in this case, is only entitled to nominal damages for such interference with his horse."

The eleventh is, " the refusal to charge that if the plaintiff has not established, by proof, the relation of cause and effect between the conduct complained of, and the injury he alleges he has received, he is not entitled to recover, even though the jury should find that some of the defendants removed the horse."

As full and accurate instructions were given to the jury, by the court below, in relation to the several matters contained in the three assignments last mentioned, there was no error in declining to charge in the precise terms called for by the counsel of the defendants.

The twelfth assignment is founded upon the refusal of the judge, at the circuit, to charge the jury " that there is no evidence in this case that Cowell removed the horse, because Bruch directed him to do so; that the defendant, Cowell, does not testify that he made the removal, or was influenced

to do so, because Bruch directed him to do so." Henry Dickson, one of the witnesses in the cause, testified that Bruch told him " that he [Bruch] told Cowell to untie Carter's horse, and tie him to the other post." Cowell, another witness, testified that, as he was about to tie the horse to a post adjoining the one to which Carter had tied him, on the right hand side, Bruch told him to tie to the post on the left hand side, and that he (Cowell) then led the horse round to that post.

Here was certainly some evidence that he removed the horse because Bruch directed him to do so, and there was no error in refusing to charge as requested.

The matter complained of in the fourteenth assignment is, that the judge charged the jury, " that the ownership of the post, at which the horse stood tied, contended for by the defendants, is not to be considered by you, because it is not proved, the defendants not having raised such question by their pleadings." It has already been decided, in considering the fourth and fifth errors assigned, that the ownership of the post, as offered to be proved by the defendants, was wholly immaterial, and that, if material, it could not be given in evidence under the pleadings in this cause. There was, therefore, no error in this part of the charge.

The fifteenth assignment draws in question that part of the judge's charge in which he instructed the jury, " that it is not necessary to make him (George Bruch) a co-trespasser to show that he manually assisted the other defendants in removing the horse. If he encouraged or directed the doing of the act, by his conduct, or his words, he is equally liable with the other defendants." There was certainly no error in this part of the charge.

The doctrines here stated are perfectly well settled. See 2 *Stark. Ev.* 809; 1 *Chitty Pl.* 79, 80; 2 *Saund. Pl. & Ev.* 863.

Exceptions were taken at the trial to that part of the judge's charge in which he instructed the jury, " that the defendants, who committed the act, are responsible for the natural, immediate, and direct consequences of the act which

they did, &c. The next question is, what was the consequence of that trespass? The defendants, who committed it, are responsible for the natural, immediate, and direct consequences of the act which they did. Did the removal of the horse, and the tieing him to the post to which he was removed, occasion his death? If so, the defendants, who committed the act, are responsible for his death. Upon this the sixteenth and nineteenth assignment of errors are founded. It having been already decided that the act of the defendants here referred to, was an illegal act—essentially, an act of trespass—it is perfectly clear that they were responsible, not merely for the bare act of trespass, but also for the natural, immediate, and direct consequences of that act. See 3 *Parsons on Cont.* 177, 178, 223; 1 *Hilliard on Torts*, 84, 85.

The seventeenth and eighteenth assignments do not appear to involve any question of law not already decided. They relate mainly to the comments of the judge upon the evidence in the cause, and to some remarks bearing upon the credibility of one of the witnesses. A judge has an undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may intimate an opinion as to the weight of evidence. He may direct the attention of the jury to any matter in the cause affecting the credibility of a witness. But whether he will exercise all or any of these rights in a given case, and to what extent, depends entirely upon his judicial discretion. Even if the judge, therefore, in the present case, was mistaken in the exercise of this discretion, as in my opinion he clearly was not, such mistake cannot be assigned for error. See cases before cited as to matters resting in discretion.

There is no error in the record, and the judgment must be affirmed.

*For affirmance*—ZABRISKIE, C., ELMER, BEDLE, DALRIMPLE, WOODHULL, FORT, WALES, CLEMENT, VAIL. 9.

*For reversal*—VREDENBURGH. 1.

CITED in *Delaware, Lackawanna and Western R. R. Co.* v. *Toffey,* 9 *Vroom* 530.