## KOURY *v.* MORGAN.

### Opinion delivered December 20, 1926.

1. VENDOR AND PURCHASER—NOTICE OF LEASE.—Evidence *held* to show that a purchaser of land had actual knowledge of a gas and oil lease thereon, though the lease was not placed of record until after he had acquired title.

2. MINES AND MINERALS—PRIORITY OF OIL AND GAS LEASE.—Where the rights of lessees under an oil and gas lease were acquired prior in time to those of a purchaser of the fee, their rights must prevail in case of conflict.

3. MINES AND MINERALS—LIABILITY OF LESSEE TO FEE-OWNER.—Lessees under an oil and gas lease, executed before a sale of the land, are not liable to the purchaser by reason of operation of the lease, unless they negligently injured the land.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

*Powell, Smead & Knox,* for appellant.

*Allyn Smith,* for appellee.

WOOD, J. On May 19, 1922, Ida Bell, a widow, executed a lease to Eli D. Bernstein, by which, for a valuable consideration, the lessor leased to the lessee a parcel or lot of land in the town of Norphlet, Union County, Arkansas. The land described in the lease did not properly describe the lands which were intended by the parties to be leased. This lease, with the imperfect description of the land, was recorded on May 25, 1922. On March 20, 1924, a lease was executed by Ida Bell to Eli D. Bernstein, which was dated as of May 19, 1922. This latter lease described the land as follows: "Beginning at the northwest corner of the northeast quarter of the southwest quarter of section 21, township 16 south, range 15 west,

and running thence east 395 feet for beginning point; thence east 155 feet; thence south 510 feet to the north line of the Missouri Pacific right-of-way; thence north 49 degrees west along said right-of-way line 285 feet; thence north 300 feet to place of beginning, and containing two acres, more or less."

The lease contains this recital: "This lease is made to correct and supersede, in all things pertaining thereto, a certain oil and gas lease executed May 19, 1922, and recorded in book 133, p. 180, of the records of Union County, Arkansas." The lease further recited that it was executed "for the sole and only purpose of mining and operating for oil and gas, laying of pipe lines, building of tanks, towers, stations and structures thereon to produce, save, and take care of said products, and all that certain tract of land situated in the county of Union," etc., describing the same as above. The last lease was recorded April 16, 1924.

In March, 1924, Ida Bell, by warranty deed, conveyed to Lee Morgan the above lands for the consideration of $450, which deed was duly filed for record on the 29th of March, 1924. The land was not correctly described in that deed, but the description was corrected in a later deed executed April 8, 1924, and filed for record on that day. Morgan went into possession of the land and improved the same. On May 22, 1924, Bernstein sold his lease to Mike Koury and his successors and assigns. Koury took possession of the property and drilled a well thereon which produced oil and gas.

This action was instituted by Lee Morgan on May 1, 1924, against Mike Koury, trustee, and others, named as defendants. He alleged, among other things, that the defendants recently, at times unknown to the plaintiff, had been sinking an oil well within 150 feet of plaintiff's premises, and "had wrongfully, willfully and with conscious disregard of the rights of plaintiff in said premises," done certain acts, consisting of the building of tanks on the premises and the driving of heavy wagons across same, the breaking of the gas supply to his prem-

ises, the using of an unsafe engine and boiler; that the boiler exploded, and a portion thereof was blown with great violence through the plaintiff's rooming-house and close to persons occupying the same, endangering their lives, putting them in great fear and alarm, all to the plaintiff's damage in the sum of $10,000. Plaintiff prayed a temporary restraining order to prevent the defendants from continuing their trespasses upon his property, and, upon a final hearing, for a permanent injunction, and for judgment in the sum of $10,000.

The defendants answered, denying specifically the allegations of the complaint as to trespass and negligence, and set up that they were operating as successors and assignees of Eli D. Bernstein under the lease from Ida Bell to Bernstein, executed on May 19, 1922. They further set up that, when the plaintiff obtained his deed to the tract of land in controversy, on which he made his improvements, he was well aware of the lease mentioned from Ida Bell to Eli D. Bernstein, and that plaintiff took title and possession subject to such lease and well knowing at the time of the rights of Bernstein and his successors and assigns under the lease. They further alleged that they entered and took possession of the premises and carried on their drilling operations without objection from the plaintiff.

On the trial of the issues thus raised and the muniments of title of the respective parties as above set forth, the chancery court found that the plaintiff was the owner of the property in controversy and was in possession thereof long prior to the commencement of this action, using the same as a residence for his family and a rooming-house, prior to any oil development in the town of Norphlet, and that the defendants had actual notice of plaintiff's occupancy of the premises and of his improvements and of his ownership before they began their drilling operations. The court further found that the plaintiff was not entitled to the injunction prayed, and denied his prayer for the relief sought in that particular, but found that he was entitled to recover for damages for the

injury sustained by him, and referred this matter of damages to a special master, to take proof and ascertain the amount of such damages and report to the court. The master heard the testimony adduced by the respective parties on the issue as to the amount of the damages, and made his report to the effect that the plaintiff had been damaged by the defendants in the total sum of $6,025, enumerating various items of damage and the amounts thereof, which, in the aggregate, constituted the above sum. Exceptions were filed to this report, and the court sustained these exceptions and found that the "measure of damages in the case is the difference in the reasonable cash market value of this property just before the alleged trespass and injury complained of and the reasonable cash market value of same after such alleged trespass and injury complained of," and again referred to the master to take further testimony, if necessary, and to state the amount of the damages according to the measure of such damages as declared by the court. The master filed another report in which he itemized the plaintiff's damages as follows: The lot in question was worth, prior to the explosion and injury, the sum of $800; the buildings were worth, prior to the injury, the sum of $2,000; the plaintiff was earning with said property, on an average, every month $600; the plaintiff was entitled to one month's earnings of the tent house on account of damages in the sum of $250; that he had sustained damage by reason of the destruction of gas connections in the sum of $25, making a total sum of $3,675. The plaintiff was charged with the value of the lot immediately after the injury in the sum of $100, and of the value of the lumber in the sum of $200. The master therefore reported that the plaintiff was entitled to the sum of $3,375. The master further reported that the lot in question was practically worthless for any purpose as long as the operations of the defendants continued. Both the plaintiff and the defendants filed exceptions to the last report of the master. The cause was finally heard by the court on the entire record and all the testimony taken in

the cause both before the master and before the court. The court sustained the exceptions of both the plaintiff and the defendants to the report of the master and found that the plaintiff was entitled to recover damages of the defendants in the sum of $3,375. A decree was entered in favor of the appellee for that sum. Both parties excepted to the decree, and have duly prosecuted their appeal.

1. It will be observed that the description of the land on which the appellants were operating was not corrected and perfected until the 20th of March, 1924, and this corrected lease was not placed of record until the 16th of April, 1924. In the meantime the appellee had acquired title to the land. He had been in possession of it for over a year, and had obtained a deed correctly describing it on April 8, 1924, which was duly recorded on that day. So, the undisputed record evidence shows that, at the time the appellee took possession of the land and at the time he perfected his deed and had the same recorded, he had no constructive notice of the rights of the appellants under their lease. But Ida Bell, the common source under which the appellants and the appellee claimed, testified that she told appellee, Morgan, at the time she leased to him, that the mineral rights and oils were sold. Says she: "I told all of them, and they all built close to the line on that account." That was when she leased him the land in 1923. Also, when she sold him the land, she told him that the mineral rights were sold on it. The lease was sold on the land. Witness told the scrivener to write it in the deed, and he replied, "It won't make any difference." She further testified that she told the appellee "if he didn't want to take the land with the lease on it he didn't have to."

The appellee testified that Mrs. Bell mentioned to him once or twice that Bernstein had an oil and gas lease on his property. Witness further testified that he never heard of an oil and gas lease being on the property until Bernstein told him of it on March 29, 1924.

P. F. Harold, the notary public who took Mrs. Bell's acknowledgment to the deeds, testified that he heard Mrs. Bell make the statement to appellee, when both deeds were executed, that Eli D. Bernstein had an oil and gas lease on the land; that this was the same land she sold to appellee.

A preponderance of the evidence therefore shows that, at the time the appellee acquired his title to the land in controversy, he had actual notice of the appellant's rights under the oil and gas lease. The appellants had a right, under their lease, to mine and operate for oil and gas, to lay pipe lines and build tanks, towers, stations and structures on the land for the purpose of producing, saving and taking care of oil and gas products. The appellee, according to the preponderance of the evidence, was not holding the lands without notice of the above rights of the appellants under their oil and gas lease. The appellee therefore had notice that appellants had the right to enter upon the lands in controversy to mine for oil and gas and to do whatever was necessary, as prescribed in their lease, for the production, conservation and sale of those products. In doing so the appellants were not trespassers. As their rights were prior in time to the rights of the appellee under his deeds, wherever the rights of the appellants were in conflict with the rights of the appellee, appellants' superior rights must prevail. The appellants therefore are not liable to the appellee in the operation of their oil and gas lease unless, in operating under the terms of their lease, they have negligently injured him. As said in *Grimes* v. *Drilling Co.,* 216 S. W. 202, 204, "as appellant purchased the premises burdened with the terms of the lease, he is in no position to complain of conditions produced by appellees such as are usual and customary during the drilling of an oil well." And, as is said in *Coffindaffer* v. *Hope Natural Gas Co.,* 74 W. Va. 107, 81 S. E. 966, 967, "the principle is well established that injury necessarily inflicted in the exercise of a lawful right does not constitute liability. The injury must be the direct result of the commission of a

wrong. If defendant did no wrong, it is not liable, notwithstanding the injury.'' See also Thompson on Real Property, vol. 6, p. 282.

2. In the view we have of this record, we deem it unnecessary to set forth and discuss the testimony upon the issue of damages. We are convinced that the cause has been tried upon an entirely erroneous theory. For it appears, from the trial court's decree settling the rights of the parties and referring the cause to a master for the ascertainment of damages, the court proceeded upon the theory that the rights of the appellee to the lands were prior and superior to the rights of the appellants because of the fact, as found by the court, that the appellee had recorded his conveyance prior to the recording of the perfected lease to the appellants; that the possession of the appellee under his prior recorded deeds gave him superior rights in the premises to the appellants. But, as we have seen, the law is to the contrary wherever the rights of the appellants and those of the appellee do not coexist but are in conflict with each other. It will be observed that the court found as follows: ''That the plaintiff is entitled to recover damages from the defendants for the injuries sustained by the plaintiff to his property, and the question of the amount of such damages is referred to a special master for ascertainment, and Mr. John Harris is appointed as such special master, with instructions to ascertain such damages from the testimony already taken before the court and that to be taken by him.'' The master took testimony and made his report, bottomed upon the instructions of the court. This report upon the exceptions of the appellants thereto was disapproved and the cause was resubmitted to the master, and the court in its order found as follows: ''The court further finds that the measure of damages in this cause is the difference in the reasonable cash market value of this property just before the alleged trespass and injury complained of and the reasonable cash market value of same immediately after such alleged trespass and injury complained of.'' The master was directed to consider

the whole of the testimony already taken in determining the amount of such damage, and, if necessary, to take further testimony. The master then made his report based upon the court's additional instructions, to which exceptions were filed by both the appellants and the appellee. These exceptions were all sustained, and the court again disapproved the report of the master and entered a decree for the appellee in the sum of $3,375.

There is some testimony in the record tending to prove that the appellants had negligently damaged the appellee's property, but there is nothing in the decree to indicate that the damages were awarded the appellee upon this theory. In the absence of a finding by the trial court upon the correct theory of the law that the appellants were only liable in damages to the appellee for negligence in the operation of their lease, we deem it unnecessary, indeed improper, to set out and discuss the testimony in this record bearing upon the issue of damages. The trial court ruled correctly, under the undisputed testimony, in refusing to grant appellee's prayer for injunction, but erred in declaring that the measure of the appellee's damages is the difference in the reasonable cash market value of this property just before the alleged trespass and its cash market value after the alleged trespass and injury complained of, and in directing the master to ascertain the amount of the damages from the proof in the record and such further testimony as he might consider necessary.

Now, the operation of appellants' lease, even in the most prudent and careful manner, would necessarily diminish the cash market value of the property for residence purposes and many other uses to which the surface might be devoted. But certainly the appellants, in exercising their rights under their lease in a prudent and careful manner, would not be liable to appellee because such drilling operations diminished the cash value of the property for other purposes. In 6 Thompson on Real Property, p. 282, § 5136, the author has an interesting discussion on the subject of "Incidental Rights of Separate Own-

ers of Surface and Minerals," in the course of which, among other things, he says: "As against the surface owner, the owner of the minerals has a right, without any express words of grant for that purpose, to go upon the surface to drill wells to his underlying estate, and to occupy so much of the surface beyond the limits of his well or wells as may be necessary to operate his estate and to remove the product thereof. This is a right to be exercised with due regard to the rights of the owner of the surface, but, subject to this limitation, it is a right growing out of the contract of sale, the position of the stratum sold, and the impossibility of reaching it in any other manner. * * * It is a well settled principle that injury necessarily inflicted in the exercise of a lawful right does not create a liability. The injury must be the direct result of the commission of a wrong." Although the court, in its final decree, rejected the report of the master predicated upon the testimony and the declaration of law of the court as to the measure of damages, nevertheless the testimony was taken and the cause heard by the master and by the court upon the testimony and erroneous declaration of law which the court announced to guide the master in the matter of taking proof and formulating his report. The parties are entitled to a decision of the chancellor upon the issues joined and proof taken on a correct theory of the law. See *Greenlee* v. *Roland,* 85 Ark. 101, 107 S. W. 193; *Reeder* v. *Epps,* 112 Ark. 562, 166 S. W. 747. Therefore, since the cause was heard and determined upon an erroneous theory of the law, the judgment must be reversed, and the cause will be remanded with directions to the trial court to hear the cause upon the competent and relevant testimony already in the record, and, if the parties so elect, to take further proof and to develop the cause according to the principles of law herein announced. It is so ordered.