CAMPBELL v. SCHROCK et al. (No. 2180.)

Court of Civil Appeals of Texas. El Paso. Oct. 4, 1928.

Rehearing Denied Oct. 25, 1928.

Lipscomb & Seideman, of Fort Worth, and J. M. Caldwell, of Midland, for appellant.

Wright & Gibbs, of San Angelo, and Whitaker & Peticolas, of El Paso, for appellees.

WALTHALL, J. W. M. Schrock and Charles Brown brought this suit against Seth Campbell, alleging that in July, 1926, Will A. Martin, the then owner of all the oil, gas, and mineral in and under section 9, block B5, of the public school lands in Winkler county, Tex., for the consideration stated, executed an oil and gas lease thereon to Fount B. Armstrong, setting out said lease, the lease being in the usual form of such instruments, the lease to remain in force for ten years from its date; the lease by its terms granting the privilege of assigning same in whole or in part, and when assigned the covenants therein to extend to such assigns under the conditions stated, none brought into question here, and containing other provisions which we need not more fully state at this time. It is alleged that the lease was duly acknowledged and recorded; that on the 29th of September, 1926, said Armstrong assigned said lease to plaintiffs, who are now the owners thereof; that defendant is asserting some claim or interest in said oil and gas lease, which claim is without foundation and inferior to plaintiff's rights, and constitutes a cloud upon plaintiff's title. They pray judgment quieting title and removing cloud.

Plaintiffs, by a second count, sue in form of trespass to try title, asserting that in January, 1928, they were lawfully seized and possessed of all oil, gas, and other minerals and mineral rights in and under all of said section of land described as in the first count; they pray judgment for title, possession, with writ of restitution, damages, and costs.

Defendant, Seth Campbell, answered by general demurrer; general denial; not guilty. Defendant, also by cross-action, sues in trespass to try title to the premises and property in controversy, and sets up title in himself under the five years' statute of limitation and prays for possession; writ of restitution; costs; general and special relief.

Plaintiffs answered by general exception, general denial, and plea of not guilty.

Trial was had before the court without a jury and judgment entered for plaintiffs. Defendant excepted, gave notice of appeal, and filed assignments of error.

## Opinion.

D. E. Phillips is the common source of title. Phillips conveyed to Will A. Martin, who in turn assigned the lease to Fount B. Armstrong; Armstrong assigned lease to appellees.

Appellants submit that the lease, properly interpreted, was insufficient as a conveyance of the mineral interests owned by Will A. Martin to Fount B. Armstrong. Under this proposition appellant insists that the conveyance from Phillips to Martin does not purport to convey any surface rights in the land; that as Martin owned no interest in the surface, the instrument must be disregarded as a mineral lease, and, so regarding it, the conveyance from Martin to Armstrong is insufficient to convey any mineral interest.

The record shows that D. E. Phillips grants, bargains, sells, conveys, sets over, and assigns and delivers to Will, A. Martin "all interest in and to all of the oil, gas, and other minerals, also all phosphates, potash and other like substances in and under and that may. be produced from the following described lands situated in Winkler county, Texas, to wit: All of section Nine (9), Block B5, Public School Land, and containing 640 acres, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, also phosphates, potash and other like substances, and removing the same therefrom"—and with the usual habendum clause.

The conveyance from Martin to Armstrong, stating it as an agreement, of date July 15, 1926, recites that he "has granted, demised, leased and let and by these presents does grant, lease and let unto the lessee for the sole and only purpose of mining and operating

for oil and gas and laying pipe-line and of building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land," and describing same as in the petition, and for a ten-year lease.

On September 29, 1926, in "an assignment of oil and gas lease," after referring to the lease from Martin to Armstrong of last above date, and reciting that he is now the owner of said lease, and all rights thereunder or incident thereto, Armstrong bargains, sells, transfers, assigns and conveys all his rights, title, and interest in and to said lease and rights thereunder, together with all rights, title, and interests in and to the oil and gas or other mineral rights in and to the lands in controversy, to Schrock and Brown.

On the 29th of September, 1926, Will A. Martin, by quitclaim deed, bargains, sells, releases, and quitclaims to Brown and Schrock all his right, title, and interest in and to the land in controversy, reciting in said deed that it was specially understood that the purpose of the conveyance was to cover and convey all the right, title, and interest of the grantor in and to any and all mineral and oil and gas rights in and to said lands with the right of ingress and egress for the purpose of prospecting, extracting, and removing same.

Certificates of acknowledgment and record of said instruments are in the record.

■ The above extracts from the several conveyances show beyond question express grants to surface rights incidental to operation for production of minerals in and under the lands involved in the suit, and for all such other matters mentioned in the several grants. But had Phillips made no express grant as to the surface rights to Martin, and had Martin made no express grant to surface rights to Armstrong, such rights not having been expressly excepted or reserved in the grant, the general rule seems to be well established that where mineral rights are given as here, and the right to the use of surface is not excepted or qualified, the right to use as much of the surface as is deemed necessary or convenient follows as implied rights incident to the right granted. 40 Corpus Juris, pages 983 and 984; Donnell v. Otto (Tex. Civ. App.) 230 S. W. 864, by the Fort Worth court, in which Judge Conner said that it was immaterial that there was no specific reservation of the right to enter upon the surface for the purpose of drilling and developing the land for oil and gas— these were incidental privileges essential to the right, and necessarily implied.

■■ The wording of the several leases from D. E. Phillips, the common source of title, down to and including appellees, unmistakably show a conveyance and an intention to convey the minerals in place in the land; such minerals in place are real property and subject to conveyance and ownership as such. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. When the lease clearly shows an intention to convey the minerals in place in the land, the lease vests title thereto in the lessee, and there is no difference in the interests conveyed, whether the conveying instrument is in the form of a grant of the exclusive right to mine and appropriate the minerals, or in the form of a demise of the land for the sole purpose of mining, or constitutes a grant of the minerals with exclusive right to mine. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566 (1923).

■ The right obtained by the lessee is not a fee-simple title to the minerals in place under the conditions stated in the lease, but is a determinable fee. The Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601, and cases cited in the opinion by Judge Greenwood.

■ Under the second assignment and proposition thereunder it is submitted, in effect, that where an interest in the public school land involved here had been originally acquired by the appellant, Campbell, and had been by appellee forfeited to the state under what is known as the Relief Act of 1925, and thereafter repurchased by appellant, the appellant holds title thereto free and clear of and from all claims to any interests upon the part of any third person, and that the court erred in excluding evidence offered showing such forfeiture to the state and the repurchase by appellant.

Briefly stated, the facts are: Phillips was the common source of title. Phillips held title subject to an unpaid obligation to the state for unpaid purchase money; Phillips on April 25, 1922, by warranty deed, conveyed to Will A. Martin the mineral rights in the land and incidental surface rights necessary for mining purposes, in which conveyance there was no assumption by Martin of the unpaid purchase money due the state. Later Phillips conveyed the land to the Midland National Bank of Midland, Tex., the bank having knowledge and notice of the prior Martin deed to the minerals. The bank conveyed the land to appellant, Campbell, in part payment for which appellant assumed and agreed to pay the state the unpaid purchase money on the land. At the time appellant purchased from the bank he had knowledge and notice of the Martin deed. Campbell forfeited to the state his rights obtained under the deed from the bank and repurchased from the state under the Relief Act of 1925. Section 4 of article 5326, Rev. St. 1925 (the Relief Act) provides:

"Whenever any land affected by this act is repurchased under the rights of repurchase given herein, any lien, legal or equitable, and any valid contractual right in favor of any person or persons existing against, in and to said land or any part thereof at the time of forfeiture shall remain unimpaired and in full force and effect as if no such forfeiture had occurred."

Appellant submits that the previously acquired mineral lease of appellees above discussed is not a "contractual right; existing against, in and to said land, or any part thereof," preserved by the above act. In that we do not concur.

This court in Morrissey v. Amburgey (Tex. Civ. App.) 292 S. W. 255 (writ of error refused) had occasion to construe this same section 4 of the Relief Act (article 5326), in which Judge Higgins said:

"Section 4 of the act preserves unimpaired any lien and valid contractual right against any land so repurchased."

The case is affirmed.