## SHELL PETROLEUM CORPORATION v. LIBERTY GRAVEL & SAND CO., Inc.

### No. 3421.

Court of Civil Appeals of Texas. Beaumont.

May 9, 1939.

Rehearing Denied May 24, 1939.

472

Scott W. Key, of Houston, E. B. Pickett, Jr., of Liberty, and William D. Orem, of Houston, for appellant.

Cain & Wheat, of Liberty, and Shivers & Keith, of Pt. Arthur, for appellee.

WALKER, Chief Justice.

Under its gravel and sand lease covering 95.5 acres of land, part of the Hugh B. Johnston survey in Liberty County, appellee, Liberty Gravel & Sand Company, Inc., "mined" from the land and stored on it more than 4000 cubic yards of building sand. Appellant, Shell Petroleum Corporation, owned a mineral lease on this land senior to appellee's gravel and sand lease, of which appellee had both actual and constructive notice; the gravel and sand lease contained the following express provisions: "It is further agreed and understood by and between the parties hereto that this lease shall be subject to the terms and conditions of any past, present or future oil, gas and mineral lease contract, executed by lessor's upon the above described land." Appellant's mineral lease granted to it the "oil, gas and all other minerals," lying in, on and under the 95.5 acres of land for the purpose of developing it for oil. Appellant entered upon the land and located a drilling site upon the very spot occupied and covered by appellee's sand pile, and drilled thereon a producing oil well. Without notice to appellee and without request to it to remove the sand, appellant took possession of the sand and moved it to a new site, and in so doing destroyed the commercial value of a large part of the sand. This suit was brought by appellee for the value of the sand destroyed by appellant. We quote from appellant's brief: "The damage claimed by plaintiff is alleged to have been caused by the defendant in moving the sand from the location in preparation for drilling an oil well on such tract of land, which is covered by its mineral leases. There are no allegations, proof or findings that this defendant was in any manner guilty of negligence in its operations under such leases, or that the property of plaintiff was damaged by reason of any negligence on the part of the defendant." Appellant answered only by general demurrer and general denial. On the verdict of the jury judgment was entered in favor of appellee against appellant for the sum of $3,000, on the following facts recited in the judgment:

"The Court now finds that on or about the 14th day of October, 1937, the plaintiff had a gravel and sand lease upon the property in question and upon said date, the defendant, Shell Petroleum Corporation, had an oil and gas lease upon said property. And, the jury having found in answer to the special issues submitted to them substantially as follows: That on or about October 14, 1937, the defendant, Shell Petroleum Corporation, acting through its agents, entered upon the sand pile in question; that such entry by the said Shell Petroleum Corporation was for the purpose of drilling an oil well; that such entry by the Shell Petroleum Corporation upon the sand pile in question was made without notice to the plaintiff to remove its property therefrom; that the entry by the Shell Petroleum Corporation upon the sand pile in question was made without demand that the plaintiff remove its property therefrom; that the sand in said sand pile was damaged by reason of the entry of the Shell Petroleum Corporation thereon; that there were four thousand (4000) cubic yards of sand in said sand pile damaged by reason of the entry of Shell Petroleum Corporation thereon; that said sand, in said sand pile on October 14, 1937, in Liberty County, Texas, had a reasonable cash market value; that the reasonable cash market value of said sand, per cubic yard, in said sand pile in Liberty County, Texas, prior to the entry of the defendant, Shell Petroleum Corporation, on October 14, 1937, was seventy-five cents per cubic yard; that the reasonable cash market value of said sand, per cubic yard, in said sand pile in Liberty County, Texas, on October 14, 1937, after the entry by the defendant, Shell Petroleum Corporation, was none;"

## Opinion.

We concede appellant's propositions: (1) Under its oil and gas lease it owned the dominant right in the 95.5 acres of land. Magnolia Pipeline Company v. McCarter, Tex.Civ.App., 52 S.W.2d 663. (2) It had the right to survey the land for the purpose of locating and drilling oil wells, and, in the exercise of due care, the right to drill oil wells "wherever it might choose in the development of the premises." Stephenson v. Glass, Tex.Civ. App., 276 S.W. 1110; United North & South Oil Company v. Mercer, Tex.Civ. App., 286 S.W. 652; Campbell v. Schrock, Tex.Civ.App., 10 S.W.2d 165. (3) Its right to appropriate the surface of the land for the purpose of drilling its oil wells "was prior to any possessive rights appellee might have had to use such surface." Grimes v. Goodman Drilling Co., Tex.Civ.

App., 216 S.W. 202, 204; Koury v. Morgan, 172 Ark. 405, 288 S.W. 929, at page 931. (4) It had the right, in the exercise of due care, "under its leases to use such part of the surface of the land covered by such leases as might be necessary to drill and produce oil therefrom without let or hindrance on the part of its lessors, and in the exercise of that right, to drill a well at the very point where plaintiff had its sand pile." Mid-Texas Petroleum Company v. Colcord, Tex.Civ.App., 235 S.W. 710; United North & South Oil Company v. Mercer, supra. Appellant's points are grounded on the general proposition of law that an action will not lie for injury resulting "from the mere exercise of a legal right * * * unless injury results from want of proper care or skill." 1 Tex.Jur. 627, 628.

But these propositions are not in point on the facts of this case. Appellee did not complain of the exercise by appellant of its right to select as a drilling site the spot occupied by its sand pile, nor of the drilling of the well, nor of damages flowing from the drilling of the well, nor of damages flowing from the oil produced by the well. The right to select the site for the well and the right to drill the well constituted "the mere exercise of a legal right." But what appellant did was not "the mere exercise of a legal right"; appellee claimed damages "caused by the defendant in moving the sand," quoting from appellant's brief.

Appellee was in lawful possession of its sand, and thus, lawfully, held the very spot of land occupied by its sand pile. Though appellant had the dominant estate in that very spot under the provisions of its oil and gas lease, yet it could take possession against appellee's prior lawful occupancy, only by lawful means. By seizing and moving the sand without notice to appellant and without demand that it move its sand, appellant committed a "trespass" against the rights of appellee. "Every invasion of private property, be it ever so minute, is a trespass." Webb's Pollock on Torts, p. 10; "In a general sense, any invasion of another's rights is a trespass." 63 C.J. 884.

Appellant contends by several propositions that it was not liable for the damages sued for, for the reason that appellee did not plead and prove that it was guilty of negligence in moving and damaging the sand; that contention is denied.

Appellee made a prima facie case of trespass by pleading and proving ownership of the sand, and the legal right to mine and store it on the land—these issues were established by the introduction in evidence of the sand and gravel lease; and that, under its lease, it mined and stored the sand, and that appellant, without its permission, took possession of and damaged the sand. On the issue of trespass, "negligence" on the part of appellant was not an essential element of appellee's cause of action. "Where trespass to property is committed by a voluntary act, known or not known to be an infringement of another's right, there the trespasser, as regards liability for consequences, is on the same footing as a wilful wrong-doer." Webb's Pollock on Torts, p. 41; see the following note, pages 424, 425: "Trespass to goods. Following what has just been said under What Shall Be Said A Trespass, it is a rule that a trespass to personal property is an injury to the right of possession. And the fact that the right was infringed without wrongful intent, or by accident or mistake, is no excuse. Dexter v. Cole, 6 Wis. [319] 320 [70 Am. Dec. 465]; Lunt v. Brown, 13 Me. 236; Staples v. Smith, 48 Me. 470; Ely v. Ehle, 3 N.Y. [506] 507; Billingsley v. White, 59 Pa. [464] 469; Haythorn v. Rushforth, 19 N.J.L. 160 [38 Am.Dec. 540]; Muggridge v. Eveleth, 9 Metc. [Mass.] 233; Stanley v. Gaylord, 1 Cush. [Mass.] 536 [48 Am.Dec. 643]; White v. Brantley, 37 Ala. 430; Hobart v. Hagget, 12 Me. 67 [28 Am.Dec. 159]; Gilman v. Emery, 54 Me. 460; Bruch v. Carter, 32 N.J.L. 554; Dufour v. Anderson, 95 Ind. 302; Burgess v. Graffam [C.C.] 18 F. 251; Welsh v. Bell, 32 Pa. 12."

Since appellee plead an action of trespass, to state a defense the burden rested on appellant to plead justification—on the facts of this case, the exercise of due care in seizing and moving the sand. The exercise of due care, an affirmative defense, was not available to appellant under its general denial. The rule is thus stated in 26 R.C.L. 967: "But justification as a defense to an action of trespass must be specially pleaded and is not available under a plea of the general issue, whether the action is for an injury to the person or to property." See, also, 63 C.J. 986, Sec. 166. Discussing the defenses available to appellant under its general denial, it is said in 63 C.J. 986: "General Issue or

General Denial. The general issue, which denies all material allegations of the declaration, or the principal fact on which it is founded, denies, in an action of trespass, the act of trespass alleged, and that it was on the land described in the declaration." All issues available to appellant under its general denial were found against it.

Even if appellee's lease, construed in connection with appellant's lease —the two leases being part of appellee's petition—constituted an implied grant of authority to appellant to enter upon the land and seize and remove the sand, appellant had the right to exercise that authority only in the exercise of due care, to be specially plead as a defense. The leases did not justify the taking of the sand by force and against the will of appellant. On authority of Loftus v. Maxey, 73 Tex. 242, 11 S.W. 272, the rule is thus stated by 41 Tex.Jur. 425: "However, an agreement which secures a right to take possession of property in certain circumstances does not, it seems, justify a taking thereof by force or against the will of the possessor."

The controlling issue in the case is one of pleading: Did the burden rest upon appellee to plead negligence as an element of its cause of action, or on appellant as an element of its defense? The evidence clearly raised against appellant the issue of negligence in seizing and moving the sand. The sand, at considerable expense, was mined and stored by appellee for sale to its customers, and appellant seized and moved it as if it were only ordinary "dirt." Of course, that evidence was not available to appellee if "negligence" was an element of its cause of action, for the reason that proof without pleading will not support a judgment. But we have decided that issue in appellee's favor—that it did not rest under the burden of pleading negligence. So, since appellant did not justify its action by pleading "the exercise of due care," the issue, as a defense, is not in the case.

Appellant's second point is that, under the terms of its lease, it owned the "sand" mined by appellee; the point made is that building sand is a mineral within the granting clause of the lease. Praeletorian Diamond Oil Ass'n v. Garvey, Tex. Civ.App., 15 S.W.2d 698, denies that construction of appellant's lease.

After due deliberation the jury reported its verdict to the court. On inspecting the verdict the court declined to receive it on the ground of conflict in the answers. The court did not err in instructing the jury, in view of the conflict, "to return to the jury room and to further consider the evidence in the case."

The judgment of the lower court is in all things affirmed.

Affirmed.